NEW FREEDOM MORTGAGE CORPORATION
v GLOBE MORTGAGE CORPORATION

Docket No. 274864. Submitted April 9, 2008, at Detroit. Decided August
5, 2008. Approved for publication September 23, 2008, at 9:20 a.m.

New Freedom Mortgage Corporation brought an action in the Wayne
Circuit Court against Globe Mortgage Corporation and others,
seeking, in part, reimbursement for the amounts that the plaintiff,
who is in the business of originating and purchasing residential
mortgage loans, paid to Impac Funding Corporation following the
default of two loans that New Freedom had funded through Globe.
Title insurance policies had been issued to Impac, to whom New
Freedom assigned both loans, by defendant Scott W. Kissner Title
& Escrow Services, Inc., the issuing agent for defendant Common-
wealth Land Title Insurance Company. Impac had foreclosed on
the properties after the defaults and then purchased the properties
on credit for an amount equal to the unpaid principal and interest
on the mortgages plus the costs of foreclosure. Such a purchase is
known as a "full credit bid," which satisfies the mortgage debt and
extinguishes the mortgage. The plaintiff also asserted claims of
fraud against Globe, defendant Gerald J. Chastain, who appraised
one of the properties, and other defendants, claiming that the
plaintiff's losses resulted from the fraudulent or dishonest acts or
omissions of Kissner. Chastain, New Freedom, Globe, and Com-
monwealth sought summary disposition. Some of the defendants
brought cross-actions against some of the other defendants. The
court, John A. Murphy, J., granted summary disposition in favor of
Chastain, Commonwealth, and Globe. The court held that an
indemnity provision in the loan purchase agreement between New
Freedom and Globe applied and that Commonwealth, through
Kissner, had violated a closing protection letter issued by Com-
monwealth with regard to the loan that Globe originated to
defendant Crystal Solomon. The court held that there was a
genuine issue of material fact regarding whether Chastain was
negligent in performing his appraisal, but, with respect to Globe
and Commonwealth, the court reasoned that New Freedom had
suffered no damages because Impac had tendered a "full credit
bid," which satisfied the debt. In addition, the court held that the
full credit bid rule barred the action against Chastain because

there was no evidence that Chastain had committed fraud. New Freedom appealed from the order dismissing the claims against Solomon and from the order denying New Freedom's motion for summary disposition and granting summary disposition in favor of Globe, Commonwealth, and Chastain and also granting Globe, Commonwealth, and Chastain case evaluation sanctions.

The Court of Appeals *held*:

1. The trial court properly applied the full credit bid rule to bar the plaintiff's claims against Globe, Commonwealth, and Chastain and did not err by granting summary disposition in their favor.

2. The trial court did not err by applying the full credit bid rule to prevent recovery under the loan purchase agreement between the plaintiff and Globe because the plaintiff did not incur any damages.

3. Globe is not liable to the plaintiff under any of the representations and warranties contained in the loan purchase agreement.

4. Commonwealth is not liable to the plaintiff under the closing protection letters that Commonwealth issued to the plaintiff for any of Kissner's violations of the plaintiff's closing instructions.

5. The trial court did not err in holding that the full credit bid rule precluded any recovery with regard to the negligence and fraud claims against Chastain because the plaintiff did not suffer any damages.

6. The issue regarding the award of case evaluation sanctions is moot.

Affirmed.

MORTGAGES — FORECLOSURES — FULL CREDIT BIDS.

A lender that bids at a foreclosure sale is not required to pay cash, but rather is permitted to make a credit bid because any cash tendered would be returned to it; if the credit bid is equal to the unpaid principal and interest on the mortgage plus the costs of the foreclosure, it is a full credit bid; a full credit bid by a mortgagee satisfies the mortgage debt and extinguishes the mortgage.

*Jaffe, Raitt, Heuer & Weiss, P.C.* (by *Brian G. Shannon* and *Patrice S. Arend*), for New Freedom Mortgage Corporation.

*Thomas M. Keranen & Associates, P.C.* (by *Mark B. Dickow*), for Globe Mortgage Corporation.

*Geoffrey S. Walker, P.C.* (by *Geoffrey S. Walker*), for Gerald J. Chastain.

*May, Simpson & Strote* (by *Thomas C. Simpson* and *Beth I. deBaptiste*) for Commonwealth Land Title Insurance Company.

Before: KELLY, P.J., and OWENS and SCHUETTE, JJ.

PER CURIAM. Plaintiff, New Freedom Mortgage Corporation, appeals as of right the trial court's order dismissing its claims against defendant/cross-defendant Crystal Solomon. Plaintiff also challenges the order denying its motion for summary disposition and granting summary disposition in favor of defendant/cross-plaintiff, Globe Mortgage Corporation (Globe), and defendants Commonwealth Land Title Insurance Company (Commonwealth) and Gerald J. Chastain, and the order granting Commonwealth, Globe, and Chastain case evaluation sanctions. We affirm.

### I. BASIC FACTS AND PROCEEDINGS

Plaintiff, who is in the business of originating and purchasing residential mortgage loans, entered into a loan purchase agreement with Globe, who is in the business of originating and brokering residential mortgage loans. Globe originated a loan to Solomon regarding a residential property located on Burns Street in Detroit, and plaintiff funded the loan. Globe also originated a loan to defendant/cross-defendant Douglas Bowers regarding a residential property on Runyon Street in Detroit, and plaintiff funded this loan as well. The issues presented in this appeal arise from these two transactions. Commonwealth, a company that provides title insurance, issued closing protection letters to plaintiff in connection with title insurance it issued

regarding the Solomon and Bowers loans. Defendant Scott W. Kissner Title & Escrow Services, Inc. (Kissner), was the issuing agent. The title insurance policies were issued to Impac Funding Corporation (IFC), to whom plaintiff assigned both loans.

Defendant/cross-defendant Marco Welch worked for Globe as a loan officer, and defendant/cross-defendant Napolean Howard is Solomon's stepbrother. Howard contacted Welch on Solomon's behalf for the purpose of obtaining financing for an investment property for Solomon. At Welch's request, Chastain conducted an appraisal of the Burns Street property and estimated that it was worth $411,000. The purchase price for the Burns Street property was $407,000. At the closing, rather than providing funds, Solomon received a check for $44,612.30 as part of a rehabilitation agreement with the sellers. Solomon indicated that she intended to occupy the home, but Welch entered into a land contract with her to purchase the property, and he occupied the home. Solomon defaulted on her loan, and IFC foreclosed on the property. IFC then purchased the Burns Street property, and an appraisal estimated the property's value at $175,000. IFC paid $199,300 for repairs and sold the property for $420,000. IFC notified plaintiff of its obligation to repurchase the Solomon loan, and plaintiff paid IFC.

Bowers indicated that he intended to occupy the home on the Runyon Street property as his primary residence, but he actually purchased the property for his son, who would not have qualified for financing. The purchase price for the Runyon Street property was $80,000. Bowers defaulted on his loan, and Bankers Trust, a trustee related to IFC, foreclosed on the property. IFC purchased the property, and it was sold for $20,000. Plaintiff indemnified IFC for $47,333.98.

In its complaint, plaintiff sought reimbursement for the amounts it paid IFC, alleging that Globe violated the loan purchase agreement and Commonwealth violated its closing protection letters. Plaintiff also asserted fraud claims against Globe, Chastain, and several other defendants and claimed that its loss resulted from the fraudulent or dishonest acts or omissions of Kissner. Chastain, plaintiff, Globe, and Commonwealth sought summary disposition. The trial court granted Chastain, Commonwealth, and Globe summary disposition. The trial court held that an indemnity provision in the loan purchase agreement between plaintiff and Globe applied and Commonwealth, through Kissner, had violated the closing protection letter regarding the Solomon loan. The trial court held that there was a genuine issue of material fact regarding whether Chastain was negligent in performing his appraisal. However, with respect to Globe and Commonwealth, the trial court reasoned that plaintiff had suffered no damages because IFC had tendered a "full credit bid," which satisfied the debt. With regard to Chastain, the trial court held that the full credit bid rule barred the action because there was no evidence that Chastain had committed fraud.

## II. STANDARDS OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Zsigo v Hurley Medical Ctr*, 475 Mich 215, 220; 716 NW2d 220 (2006). When reviewing a decision on a motion for summary disposition pursuant to MCR 2.116(C)(10), this Court considers the affidavits, pleadings, depositions, admissions, and other evidence in the light most favorable to the party opposing the motion. *Zsigo, supra* at 220. Summary disposition is appropriately granted if, except for the amount of

damages, there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Id*. This Court reviews de novo questions of law, including issues regarding the existence and interpretation of a contract. *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006).

### III. FULL CREDIT BID RULE

Plaintiff argues that the trial court erred in granting Globe, Commonwealth, and Chastain summary disposition in reliance on the full credit bid rule, which dictated that plaintiff had suffered no damages. We disagree.

When a lender bids at a foreclosure sale, it is not required to pay cash, but rather is permitted to make a credit bid because any cash tendered would be returned to it. *Alliance Mortgage Co v Rothwell*, 10 Cal 4th 1226, 1238-1239; 44 Cal Rptr 2d 352; 900 P2d 601 (1995). If this credit bid is equal to the unpaid principal and interest on the mortgage plus the costs of foreclosure, this is known as a "full credit bid." *Id*. at 1238. When a mortgagee makes a full credit bid, the mortgage debt is satisfied, and the mortgage is extinguished. *Bank of Three Oaks v Lakefront Properties*, 178 Mich App 551, 555; 444 NW2d 217 (1989). MCL 600.3280, which addresses deficiencies, provides, in pertinent part, as follows:

> When, in the foreclosure of a mortgage by advertisement, any sale of real property has been made after February 11, 1933, or shall be hereafter made by a mortgagee, trustee, or other person authorized to make the same pursuant to the power of sale contained therein, at which the mortgagee, payee or other holder of the obligation thereby secured has become or becomes the purchaser,

or takes or has taken title thereto at such sale either directly or indirectly, and thereafter such mortgagee, payee or other holder of the secured obligation, as aforesaid, shall sue for and undertake to recover a deficiency judgment against the mortgagor, trustor or other maker of any such obligation, or any other person liable thereon, it shall be competent and lawful for the defendant against whom such deficiency judgment is sought to allege and show as matter of defense and set-off to the extent only of the amount of the plaintiff's claim, that the property sold was fairly worth the amount of the debt secured by it at the time and place of sale or that the amount bid was substantially less than its true value, and such showing shall constitute a defense to such action and shall defeat the deficiency judgment against him, either in whole or in part to such extent.

In its complaint, plaintiff alleged fraud, misrepresentation, and breach of contract, and in its response to Chastain's motion for summary disposition, it asserted that Chastain had been negligent. Fraud and misrepresentation are similar and require proof that

"(1) defendants made a material representation; (2) it was false; (3) when defendants made it, defendants knew that it was false or made recklessly without knowledge of its truth or falsity; (4) defendants made it with the intent that plaintiffs would act upon it; (5) plaintiffs acted in reliance upon it; and (6) plaintiffs suffered damage." [*Mitchell v Dahlberg*, 215 Mich App 718, 723; 547 NW2d 74 (1996), quoting *Arim v Gen Motors Corp*, 206 Mich App 178, 195; 520 NW2d 695 (1994).]

Damages are an element of a breach of contract action. *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003); *Shippey v Madison Dist Pub Schools*, 55 Mich App 663, 668; 223 NW2d 116 (1974). The elements of a negligence claim are "duty, breach of that duty, causation, and damages." *Brown v Brown*, 478 Mich 545, 552; 739 NW2d 313 (2007). Therefore, if there are no damages, it is appropriate to grant sum-

mary disposition on fraud, misrepresentation, breach of contract, and negligence claims.

The trial court relied on *Smith v Gen Mortgage Corp*, 402 Mich 125, 126-127; 261 NW2d 710 (1978), in which the mortgagors were in default and the property was totally destroyed by a fire. After the fire, the mortgagee's assignee bid the full amount of the outstanding debt plus costs and fees. *Id.* at 127. The Court relied on *Whitestone S & L Ass'n v Allstate Ins Co*, 28 NY2d 332, 336; 321 NYS2d 862; 270 NE2d 694 (1971), in which the court held that the mortgagee's full credit bid barred recovery by the mortgagee under an insurance policy when a fire partially destroyed the mortgaged property before the foreclosure sale. Our Supreme Court similarly held that the mortgagee was not entitled to the insurance proceeds. However, because this was a previously unannounced rule, the Court did not apply it to the parties in that case. *Smith, supra* at 129-130.

This Court has applied the full credit bid rule in several cases regarding similar insurance proceeds since *Smith*. In *Heritage Fed Savings Bank v Cincinnati Ins Co*, 180 Mich App 720, 724; 448 NW2d 39 (1989), the Court held that the mortgagee was not entitled to fire insurance proceeds when the fire occurred before the foreclosure and the mortgagee purchased the property for an amount greater than the debt at the foreclosure sale. The Court reasoned that the debt had been satisfied and that the *Smith* rule was intended to prevent a mortgagee from receiving a double recovery. *Id.* at 725-726. In *Emmons v Lake States Ins Co*, 193 Mich App 460, 462-463; 484 NW2d 712 (1992), the mortgagee bid the full amount of the outstanding principal and accrued interest at a foreclosure sale following a fire that partially destroyed the secured property. The Court applied *Smith* and stated that,

"[g]enerally, a mortgagee is not entitled to insurance proceeds when a loss occurs before a foreclosure sale in which the mortgagee purchases for a bid which extinguishes the mortgage debt." *Id.* at 463. The mortgagee attempted to claim the insurance proceeds under the mortgagor's assignment of the insurance proceeds, but the Court rejected this argument because the debt had not survived the foreclosure and there was no deficiency. *Id.* at 463-465.

In *Janower v F M Sibley Lumber Co*, 245 Mich 571, 572; 222 NW 736 (1929), the mortgagee purchased the secured property at a foreclosure sale for the full amount of principal, interest, and costs. The mortgagee sought the appointment of a receiver to prevent waste, i.e., for the performance of necessary repairs and the payment of unpaid taxes. *Id.* at 573. Our Supreme Court held:

> The rule of *caveat emptor* applies with full force to this judicial sale. The petitioner, purchaser, took "subject to defects, liens, and incumbrances of which he has notice or of which he could obtain knowledge under his duty to inform himself." It purchased subject to the very tax liens of which it complains, and the premises in the condition of which it complains, and it bid the full amount due. There can be no decree for deficiency. [*Id.* (citation omitted).]

See also *Pulleyblank v Cape*, 179 Mich App 690, 696; 446 NW2d 345 (1989).

In *Bank of Three Oaks, supra* at 553, the lender bid the full amount of the mortgage plus costs and fees at a foreclosure sale. The lender attempted to recover the amount of interest on the debt that accrued during the redemption period, as well as insurance, taxes, and fees. *Id.* at 554. This Court held that the lender's purchase for the full amount of indebtedness extinguished the debt and mortgage. *Id.* at 555. The lender also at-

tempted to recover this amount from several individuals who had executed a guarantee. *Id.* at 554. The Court held that the guarantors were not liable because the borrower had never incurred a liability. *Id.* at 558-559. The Court stated that the expenses had arisen from the decision to purchase the property at the foreclosure sale, which was wholly independent from the original transaction covered by the guarantee. *Id.* at 559. Further, the lender's full credit bid meant that there was no deficiency. *Id.* at 561.

In *Chrysler Capital Realty, Inc v Grella*, 942 F2d 160, 161-162 (CA 2, 1991), the mortgagee purchased the secured property at a foreclosure sale for the amount of the entire debt, including accrued interest and costs. The mortgagee then sued the mortgagor and Mabon, Nugent & Co., a partnership that owned 100 percent of one of the limited partners in the mortgagor, and who had also arranged the mortgage loan between the mortgagor and the mortgagee. *Id.* at 161. The mortgagee sought to recover damages because the fair market value of the property was less than the amount of its full credit bid, arguing that Mabon had fraudulently induced it to enter into the loan. *Id.* at 162. The United States Court of Appeals for the Second Circuit applied *Smith, Pulleyblank,* and *Bank of Three Oaks,* and declined to create an exception to the full credit bid rule where the underlying mortgage transaction was induced by fraud. *Id.* at 163. Although this Court is not bound by the decisions of the lower federal courts, this decision is persuasive. *Greater Bible Way Temple of Jackson v City of Jackson,* 478 Mich 373, 396; 733 NW2d 734 (2007).

Plaintiff relies on several out-of-state cases where the courts declined to apply the full credit bid rule to bar actions against nonborrower third parties. The leading

case is *Alliance Mortgage, supra* at 1232-1235, in which the lender made a full credit bid for secured properties at a foreclosure sale, and it sued its real estate appraiser and broker, title insurers (its fiduciaries), and others, alleging that they had fraudulently induced it to make certain loans to fictitious buyers. After it acquired the properties, the lender learned that the true market value was less than the value that had been represented to it and less than the balance of the mortgage, requiring the lender to perform repairs and incur other costs. *Id.* at 1232-1233. The California Supreme Court acknowledged that the lender generally has a burden to make an informed bid. *Id.* at 1246. However, given the lender's alleged fiduciary relationship with the defendants and the fact that it did not discover the alleged fraud until after the foreclosure sale, the court held that the full credit bid rule did not, as a matter of law, bar its claims. *Id.* at 1245-1248, 1249-1251. Rather, the court stated that the lender could recover against the defendants to the extent that their fraudulent misrepresentations caused its full credit bids and that the lender's reliance on these misrepresentations was appropriate, given the fiduciary relationship, or was not otherwise manifestly unreasonable. *Id.* at 1246-1248. Given that there are no allegations of a fiduciary relationship between plaintiff and Globe, Commonwealth, or Chastain, *Alliance Mortgage* is distinguishable.

At least one California court after *Alliance* has applied the full credit bid rule to nonborrower third parties where fraud was not alleged. See *Pacific Inland Bank v Ainsworth*, 41 Cal App 4th 277, 279-280, 283-284; 48 Cal Rptr 2d 489 (1995) (affirming the application of the full credit bid rule to preclude a lender's recovery against an appraiser for negligence), applying *Cornelison v Kornbluth*, 15 Cal 3d 590; 125 Cal Rptr 557; 542 P2d 981 (1975). In *Pacific Inland Bank, supra*

at 283-284, the court reasoned that the lender could have taken appropriate steps to determine the property's value before making its full credit bid and bears the burden of making an informed bid. Although *Alliance* and *Pacific Inland Bank* are not binding on this Court, they are instructive. Further, *Chrysler Capital Realty, supra,* supports the conclusion that the full credit bid rule bars fraud actions. Michigan caselaw supports these conclusions.

A mortgagee purchases subject to the condition of the property, and the rule of *caveat emptor* applies. *Janower, supra* at 573; *Pulleyblank, supra* at 696. Further, as a purchaser at the foreclosure sale, IFC and Bankers Trust stood "in the same position as any other purchaser." *Id.* at 694. If a third party had bid and purchased the properties for the full amount of the mortgages and costs, IFC and Bankers Trust would have received this amount and applied it to the debts. If the third party then discovered that the properties were worth less than the full bids, it would have no recourse against Globe, Commonwealth, or Chastain. The *Smith* rule was intended to prevent a mortgagee from receiving a double recovery. *Heritage Fed Savings Bank, supra* at 725-726. Although plaintiff did not actually receive the payments at the foreclosure sales, it assigned both mortgages to IFC for valuable consideration. Therefore, it has already received compensation for the loans. As our Supreme Court has stated, " 'To allow the mortgagee, after effectively cutting off or discouraging lower bidders, to take the property—and then establish that it was worth less than the bid—encourages fraud, creates uncertainty as to the mortgagor's rights, and most unfairly deprives the sale of whatever leaven comes from other bidders.' " *Smith, supra* at 129, quoting *Whitestone S & L Ass'n, supra* at 337 (emphasis omitted). We therefore conclude that the trial court properly applied the full credit bid rule to bar

plaintiff's claims against Globe, Commonwealth, and Chastain, and did not err by granting summary disposition.[1]

#### IV. LOAN PURCHASE AGREEMENT

Plaintiff also argues that the trial court erred by applying the full credit bid rule to prevent recovery under the loan purchase agreement between plaintiff and Globe. We disagree.

In particular, plaintiff relies on the indemnification provision. The trial court found that the indemnification provision was broad enough to include acts of fraud committed by Welch, an undisputed employee of Globe. Indemnity agreements are construed in the same manner as contracts generally. *Badiee v Brighton Area Schools*, 265 Mich App 343, 351; 695 NW2d 521 (2005). The indemnification agreement contained in the loan purchase agreement provides, in relevant part:

> Broker agrees to indemnify, defend and hold NEW FREEDOM MORTGAGE CORPORATION harmless from and against any and all claims, losses, costs, or damages, including but not limited to reasonable attorneys' fees and expenses which
>
> a. arise out of any act or omission of Broker or any employee or agent of Broker;
>
> *   *   *
>
> d. arise out of or in connection with any falsity, incorrectness, or incompleteness in any material respect of any representation or warranty made by Broker herein[.]

---

[1] While this result may seem harsh, we note that plaintiff obtained a default judgment against Kissner, Howard, and Welch jointly and severally in the amount of $228,747.55. Further, plaintiff obtained a $13,000 settlement against Solomon and a default judgment against Bowers for $47,333.98, in violation of the full credit bid rule.

When construing a contract, the goal is to ascertain and enforce the parties' intent on the basis of the plain language of the contract. *Real Estate One v Heller*, 272 Mich App 174, 178; 724 NW2d 738 (2006). The loan purchase agreement requires Globe to indemnify plaintiff for any losses or damages arising out of any act or omission of Globe's employees or agents. Therefore, Globe would be liable for Welch's acts or omissions, regardless of whether it was aware of them.[2] However, as discussed in part II of this opinion, the full credit bid rule bars recovery because plaintiff did not incur any damages. Although it claims that it suffered "actual damages," these damages were a direct result of IFC's full credit bid and there is no evidence that IFC's decision to make the full credit bid arose out of Welch's acts or omissions.

We are mindful of the principle of freedom of contract, as discussed by our Supreme Court:

> The rights and duties of parties to a contract are derived from the terms of the agreement. As this Court has previously stated, "The general rule [of contracts] is that competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts." Under this legal principle, the parties are generally free to agree to whatever they like, and, in most circumstances, it is beyond the authority of the courts to interfere with the parties' agreement. Respect for the freedom to contract entails that we enforce only those obligations actually assented to by the parties. [*Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 62-63; 664 NW2d 776 (2003) (citations omitted).]

Nevertheless, the full credit bid rule overrides the indemnity provision because a mortgagee purchases

---

[2] Regarding the Bowers loan, there is no evidence that Globe or any of its agents or employees committed any acts or omissions triggering this indemnity provision.

subject to the condition of the property, and a lender who makes a full credit bid stands "in the same position as any other purchaser." *Pulleyblank, supra* at 694, and see *Janower, supra* at 573, and *Pulleyblank, supra* at 696.

Plaintiff also contends that other provisions contained in a separate part of the loan purchase agreement entitled "Representations and Warranties as to Mortgage Loans" apply because Welch's knowledge of the forgeries and falsities should be imputed to Globe. The trial court held that the other warranties contained in the loan purchase agreement did not apply because there was no evidence that Globe knew of Welch's actions. The other warranties on which plaintiff relies are as follows:

> 1. *To the best knowledge and belief of Broker,* the application has been duly executed, and all of the documents and records relating to the Mortgage Loan are genuine, bona fide and what they purport to be, do not contain forgeries or unauthorized signatures . . . . The documents and records do not fail to disclose any facts which could be material or which would make such information misleading.

> \* \* \*

> 4. There are no undisclosed agreements *between the borrower and Broker* concerning any facts or conditions, whether past, present or future, which might in any way affect the obligations of the borrower under the Mortgage Loan documents.

> 5. Broker has complied with its covenants in Section 4 of the Loan Purchase Agreement, and has disclosed to NEW FREEDOM MORTGAGE CORPORATION *all facts of which Broker has notice* which might have any influence upon the credit decision by NEW FREEDOM MORTGAGE CORPORATION, including without limitation, any information in any way communicated by Borrower or others

which might not be disclosed in the file documentation. Broker will promptly notify NEW FREEDOM MORTGAGE CORPORATION of any occurrence, act or omission of which Broker receives knowledge or notice, which occurrence, act or omission may materially affect Broker, the Mortgage Loan, the property securing the Mortgage Loan, or the Borrower.

\* \* \*

13. *To the best knowledge and belief of Broker*, all verifications of employment, deposits, down payment and credit and all names, addresses, amounts, credit information and statements of fact contained in the Mortgage Loan file, and all of the documents submitted in support of the Mortgage Loan are true, correct and bona fide and authentic and are what they purport to be. The Broker has not, and has no knowledge or reason to believe that anyone else had, given anything of value to the appraiser of the property that is collateral for the Mortgage Loan, to affect the appraised value of the subject property, and the appraisal is true, accurate, correct, bona fide and authentic in what it purports to be. [Emphasis added.][3]

Again, we glean the parties' intent from the plain language of the contract. *Real Estate One, supra* at 178. In §§ 1 and 13, Globe only warrants those items of which it has knowledge and belief. In § 5, Globe only warrants those facts of which it has notice. Plaintiffs presented no evidence that Globe, through an alleged owner, Basil Yaldo, or its president, Walter A. Yaldo, was

---

[3] In its brief on appeal, plaintiff cites §§ 2, 6, 7, and 13 of the representations and warranties part of the loan purchase agreement, but these sections do not apply to plaintiff's issues regarding forgeries in the loan documents, false information regarding occupancy and funds brought to the closing, the side deal between Solomon and Welch, and falsities in the loan documents. In the statement of facts, plaintiff quotes §§ 1, 4, 5, and 13 of the representations and warranties part of the loan purchase agreement, which is consistent with its brief in support of its motion for summary disposition. Therefore, we analyze this issue based on §§ 1, 4, 5, and 13.

aware or had notice of Welch's actions. In § 4, Globe warrants that there are no undisclosed agreements between the buyer (Solomon) and Globe. Although there was a land contract between Solomon and Welch, plaintiff presented no evidence that Globe was a party to this transaction, approved of this transaction, or even had knowledge of this transaction. Globe is not liable to plaintiff under any of these provisions.

Plaintiff claims that Welch's knowledge of his acts should be imputed to Globe. Plaintiff is correct that notice by an agent is generally imputed to the principal. *Turner v Mut Benefit Health & Accident Ass'n*, 316 Mich 6, 21; 24 NW2d 534 (1946); *Sheridan v Forest Hills Pub Schools*, 247 Mich App 611, 623; 637 NW2d 536 (2001). However, plaintiff overlooks that an employer is only vicariously liable for the acts its employees commit while performing a duty within the scope of employment, and an employer is not liable for " 'torts intentionally or recklessly committed by an employee beyond the scope of his master's business.' " *Rogers v J B Hunt Transport, Inc*, 466 Mich 645, 651; 649 NW2d 23 (2002) (citation omitted). Therefore, it is unlikely that Globe could be vicariously liable for Welch's acts, outside the indemnification provision. In any event, as discussed in part III of this opinion, the full credit bid rule bars recovery because plaintiff did not incur any damages.

With respect to the Bowers loan, plaintiff has not presented any evidence that Globe or any of its employees or agents was aware that he did not intend to occupy the property. Therefore, Globe is not liable to plaintiff under these provisions of the loan purchase agreement.

V. CLOSING PROTECTION LETTERS

Plaintiff argues that the trial court erred in applying the full credit bid rule to prevent recovery under the

closing protection letters that Commonwealth issued to plaintiff. We conclude that Commonwealth is not liable to plaintiff under the closing protection letters for Kissner's violations of plaintiff's closing instructions.

A closing protection letter is typically issued by a title insurance underwriter "[t]o verify the agent's authority to issue the underwriter's policies and to make the financial resources of the national title insurance underwriter available to indemnify lenders and purchasers for the local agent's errors or dishonesty with escrow or closing funds." 2 Palomar, Title Ins Law, § 20:11. These letters are issued incidentally to title insurance, and they are "to persuade customers to trust their agents, so that their policies can be sold." *Id.*, § 20:13. Thus, consideration is given, i.e., the purchase of the insurance policy, and a breach of contract action may be maintained independent of the title insurance policy. *Id.* The pertinent language of the closing protection letters Commonwealth issued regarding the two properties in this case is as follows:

> When title insurance of Commonwealth Land Title Insurance Company is specified for your protection in connection with closings of real estate transactions in which you are to be . . . a lender secured by a mortgage (including any other security instrument) of an interest in land, the Company, subject to the conditions and exclusions set forth below, hereby agrees to reimburse you for actual loss incurred by you in connection with such closings when conducted by the Issuing Agent referenced herein (an agent authorized to issue title insurance for the Company), and when such loss arises out of:
>
> 1. *Failure of the Issuing Agent to comply with your written closing instructions to the extent that they relate to (a) the status of the title to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land, including the obtaining of documents and the disbursement of funds necessary to*

*establish such status of title or lien, or (b) the obtaining of any other document, specifically required by you, but not to the extent that said instructions require a determination of the validity, enforceability or effectiveness of such other document, or (c) the collection and payment of funds due you, or*

*2. Fraud or dishonesty of the Issuing Agent in handling your funds or documents in connection with such closings.* [Emphasis added.]

We ascertain the parties' intent from the plain language of the contract. *Real Estate One, supra* at 178. Plaintiff contends that Commonwealth is liable for Kissner's violations of plaintiff's closing instructions. In pertinent part, plaintiff's closing instructions regarding the Solomon loan provided that the attachment to the HUD-1 settlement statement and the application must be fully and properly executed and the maximum cash to close was $47,100. The instructions also required that the HUD-1 settlement statement "must be completed properly and completely. It must reflect all applicable charges, costs, refunds, addresses, and proration dates."

Scott Kissner, the sole officer and director of Kissner, asserted that Globe, presumably Welch, provided a cashier's check for $46,387.70 at closing, but this check was never used. Rather, Scott Kissner explained that he believed the check had been presented to convince plaintiff that Solomon had provided these funds, which she never did. Instead, Solomon received a check for $44,612.30 from the sellers through Kissner, as part of a $91,000 rehabilitation agreement with the sellers. The HUD-1 settlement statement for the Solomon transaction indicates that Solomon brought $46,387.70 to the closing and fails to show that she received $44,612.30 from the sellers. On the attachment to the HUD-1 settlement statement, Kissner attested that

funds were disbursed in accordance with the HUD-1 settlement statement, but it allowed the loan to close with knowledge of the $91,000 rehabilitation agreement. Although the closing instructions did not prohibit the sellers from giving Solomon money out of their proceeds, Kissner violated the instructions by failing to require Solomon to tender $46,387.70 and failing to properly execute the attachment to the HUD-1 settlement statement.

On Solomon's loan application, she asserted that she would be occupying the property as her primary residence, which was false. Rather, Welch would be occupying the property pursuant to a land contract with Solomon. Although Kissner was aware of the arrangement between Welch and Solomon two days after the closing, there is no evidence that it was aware of this information at closing. To the contrary, Solomon testified that they did not discuss the property's being an investment property at the closing. Therefore, this did not constitute a violation of the closing instructions.

Applying the closing protection letter to the facts, any failure on Kissner's part to comply with plaintiff's closing instructions did not relate to the title or lien under § 1(a) of the closing protection letter. Although the loan application contained a false statement regarding occupancy, Kissner was aware that the HUD-1 settlement statement was inaccurate, and the attachment to the HUD-1 settlement statement was falsely attested, § 1(b) of the closing protection letter provided that Commonwealth was only liable for documents specifically required by plaintiff and that Commonwealth would not be liable for any determination of the "validity, enforceability or effectiveness of such other document . . . ." Therefore, this provision does not trigger liability.

The trial court found that Kissner had violated § 1(c) of the closing instructions by permitting Solomon to leave the closing without tendering $46,387.70.[4] Paragraph 1(c) applies to "the collection and payment of funds due [plaintiff]." These funds were not due plaintiff; rather, Kissner was supposed to collect them and tender them to the sellers. Therefore, Kissner's violation of the closing instructions does not trigger liability under this paragraph, and Commonwealth was not liable for Kissner's failure to follow plaintiff's closing instructions.

Pursuant to § 2, Commonwealth is liable for Kissner's fraud or dishonesty "in handling [plaintiff's] funds or documents in connection with such closings." Plaintiff presented no evidence that Kissner was aware at closing that Solomon did not intend to occupy the property. Although there were discrepancies in the HUD-1 settlement statement and the attachment to the HUD-1 settlement statement was falsely attested, these documents did not belong to plaintiff. Kissner properly disbursed plaintiff's funds, and there were no shortages. Although Kissner violated the closing instructions and failed to notify plaintiff when it learned that Solomon was not occupying the property, there is no evidence that it committed any fraud or dishonesty in handling funds or documents that belonged to plaintiff. Therefore, § 2 does not apply and Commonwealth is not liable to plaintiff for Kissner's violations of the closing instructions.

Plaintiff also argues that Commonwealth is liable for Kissner's violations of plaintiff's closing instructions regarding the Bowers loan. The closing instructions pertaining to the Bowers loan provided, in relevant

---

[4] We note that the trial court erroneously referred to this as "Item (3)(b)" in its opinion and order.

part, that the attachment to the HUD-1 settlement statement, the occupancy statement, and the application must be fully and properly executed. The instructions also required that the HUD-1 settlement statement "must be completed properly and completely. It must reflect all applicable charges, costs, refunds, addresses, and proration dates." On his loan application, Bowers falsely asserted that he intended to occupy the property. However, plaintiff failed to present any evidence that Kissner was aware of this falsity, and § 1(b) of the closing protection letter provided that Commonwealth would not be liable for any determination of the "validity, enforceability or effectiveness of such other document . . . ." Given that there is no evidence that Kissner was aware of this misrepresentation, there is no evidence of fraud or dishonesty on Kissner's part, and § 2 does not apply. Therefore, Commonwealth is not liable to plaintiff under the Bowers closing protection letter.

### VI. NEGLIGENCE AND FRAUD

Plaintiff argues that the trial court erred in applying the full credit bid rule to plaintiff's claims against Chastain. Although there is a genuine issue of material fact regarding negligence and fraud or misrepresentation, the full credit bid rule precludes recovery because plaintiff did not suffer any damages.

Plaintiff asserted a fraud or misrepresentation claim against Chastain, and Chastain moved for summary disposition, arguing that there was no evidence of conspiracy. Although he cited no law and provided minimal argument, he provided his affidavit and an affidavit by Garrett Steele, a licensed appraiser, both of which constituted evidence that Chastain complied with industry standards in performing the Burns ap-

praisal. In response, plaintiff requested summary disposition and argued that Chastain's failure to follow industry standards constituted prima facie negligence, even though plaintiff had never pleaded negligence. At oral arguments regarding the summary disposition motions, Chastain argued that he had complied with industry standards and there was no evidence of conspiracy. Plaintiff argued that the evidence showed that Chastain was negligent. The trial court found that there was a genuine issue of material fact regarding whether Chastain was negligent, but it concluded that the full credit bid rule could not be defeated because there was no evidence of fraud.

The elements of a negligence claim are "duty, breach of that duty, causation, and damages." *Brown, supra* at 552. Duty is "the legal obligation to conform to a specific standard of conduct in order to protect others from unreasonable risks of injury." *Lelito v Monroe*, 273 Mich App 416, 419; 729 NW2d 564 (2006). " 'In deciding whether a duty should be imposed, the court must look at several factors, including the relationship of the parties, the foreseeability of the harm, the burden on the defendant, and the nature of the risk presented.' " *Id.* (citation omitted). Given that Globe hired Chastain to perform the appraisal for a loan that plaintiff was providing to Solomon, Chastain owed plaintiff a duty in performing his appraisal.

There is no evidence to support plaintiff's assertion that Chastain failed to personally inspect the Burns property. He admitted that Jeff Groff, who is not a licensed appraiser, had taken notes and prepared a diagram during the inspection, but Chastain asserted that he had personally entered the property. Chastain did not note any water or termite damage in his report, and plaintiff provided no evidence that there was any

such damage on the day Chastain appraised the property. But, an appraisal conducted 20 months later (after the foreclosure) showed extensive termite damage from a prior infestation and other reports prepared 23 months later showed water damage from the roof leaking for a period of years. Further, the rehabilitation agreement between Solomon and the sellers may indicate that the property was worth less than Chastain's appraised value. Therefore, there was a genuine issue of material fact regarding whether Chastain breached his duty. There may also be a question of fact regarding causation, i.e., whether IFC relied on Chastain's appraisal in making its full credit bid.

But even if a question of material fact exists regarding duty and causation, as already discussed, damages are also an essential element of a fraud or misrepresentation claim. *Mitchell, supra* at 723. Because the full credit bid rule dictates that there are no damages, the trial court properly granted summary disposition on this claim.

Plaintiff also challenges the trial court's ruling regarding fraud, arguing that Chastain had never requested summary disposition on a fraud claim and plaintiff had no notice that it needed to brief this issue. Given that fraud or misrepresentation was the only cause of action pleaded against Chastain, plaintiff had notice that it needed to brief this issue in its response to Chastain's motion.

### VII. CASE EVALUATION SANCTIONS

Plaintiff argues that this Court should vacate the order granting case evaluation sanctions if it reverses the order regarding summary disposition. Given our resolution of the foregoing issues and our decision to

affirm the grant of summary disposition in favor of Globe, Commonwealth, and Chastain, this issue is moot.

Affirmed.