# STATE OF MICHIGAN

# COURT OF APPEALS

STURGIS BUILDING L.L.C.,

        Plaintiff/Counter-Defendant-
        Appellant,

v

KIRSCH INDUSTRIAL PARK L.L.C.,

        Defendant/Cross-Defendant-
        Appellee,

SCOTT T. BOSGRAAF, as Trustee of the SCOTT
T. BOSGRAAF TRUST, CITY OF STURGIS, and
CLINTON ALUMINUM ACQUISITION L.L.C.,

        Defendants,

ICEBERG ENTERPRISES L.L.C.,

        Defendant/Counter-Plaintiff/Cross-
        Plaintiff,
and

LENNARD AG COMPANY,

        Defendant-Appellee.

UNPUBLISHED
August 9, 2016

No. 327454
St. Joseph Circuit Court
LC No. 12-000110-CH

STURGIS BUILDING L.L.C.,

        Plaintiff/Counter-Defendant-
        Appellee/Cross-Appellant,

v

KIRSCH INDUSTRIAL PARK L.L.C.,

        Defendant/Cross-Defendant-
        Appellant/Cross-Appellee,

No. 328282
St. Joseph Circuit Court
LC No. 12-000110-CH

-1-

SCOTT T. BOSGRAAF, as Trustee of the SCOTT
T. BOSGRAAF TRUST, CITY OF STURGIS,
LENNARD AG COMPANY, and CLINTON
ALUMINUM ACQUISITION L.L.C.,

            Defendants,

and

ICEBERG ENTERPRISES L.L.C.,

            Defendant/Counter-Plaintiff/Cross-
            Plaintiff.

---

Before:  SERVITTO, P.J., and MARKEY and GLEICHER, JJ.

PER CURIAM.

Kirsch Industrial Park's default on its nearly $3 million mortgage triggered a flurry of problems for the mortgagee, Sturgis Building.  For one, when Sturgis filed a complaint for judicial foreclosure against Kirsch, the property's tenants attempted to jump ship.  Fortunately for Sturgis, the mortgage documents allowed it to collect rents from the tenants and charge its attorney fees and costs to Kirsch.  Not every ruling went in Sturgis's favor, however.

Sturgis now appeals the circuit court's determination that the mortgage's assignment of the right to collect rents did not assign the underlying leases and that the tenants' leases terminated at the close of the foreclosure redemption period.  This conclusion is supported by both contract and common-law principles.  Kirsch appeals the circuit court's ultimate calculation of damages and denial of its request for recompense of surplus rents collected by Sturgis.  This claim is also without merit.  Accordingly, we affirm.

## I. BACKGROUND

At issue in this appeal is an industrial park in Sturgis, Michigan.  Sturgis Building, L.L.C. (Sturgis) purchased the property in 2004.  In 2007, Sturgis leased a portion of the property to Lennard Ag Company.  And in 2008, Sturgis sold the property to Kirsch Industrial Park.  Following the sale, Kirsch developed the property to take on more tenants.  Lennard Ag remained in residence and entered into leases for two areas on the property, in replacement of its original lease with Sturgis.  Kirsch also entered leases with Iceberg Enterprises, Clinton Aluminum Acquisition, and the city of Sturgis.

To finance the 2008 purchase, Kirsch borrowed $2,950,000 from Sturgis, with a 7% interest rate.  Kirsch's principal, Scott T. Bosgraaf, and his trust guaranteed payment of the loan.  The loan was secured by a mortgage in Sturgis's favor.  The mortgage required Kirsch to pay the property taxes and maintain insurance naming Sturgis as security.  As additional security for the mortgage, Kirsch included an assignment of rents and a security interest in leases:

-2-

14. **Assignment of Rents and Leases.** As additional security for the Obligations and performance of the covenants and agreements set forth in this Mortgage, pursuant to MCL 565.81 et seq. and MCL 554.231 et seq., each as amended, Borrower assigns to Lender and grants Lender a security interest in any and all leases of the Property; and all rents, issues, income, and profits derived from the use of the Property or any portion of it. These assignments shall continue to be operative during and after foreclosure or any other proceedings taken to enforce this Mortgage.

This assignment of rents is given as collateral security only and will not be construed as obligating Lender to perform any of the covenants or undertakings required to be performed by Borrower under any Lease. Nothing herein shall be construed to release any Lessee of its obligations under the Lease according to the terms and duration of the Lease.

Kirsch eventually defaulted on its loan by failing to pay the property taxes and maintain the necessary insurance. Sturgis notified Kirsch's tenants of their landlord's default and filed a judicial foreclosure action in February 2012. As part of its claims, Sturgis sought to collect rents in Kirsch's stead. This assignment was permitted by the above mortgage provision as well as the tenants' leases. The tenants complied by forwarding their rent payments to Sturgis.

On March 13, 2013, the circuit court entered summary disposition against Kirsch in Sturgis's favor. The court ordered Kirsch and Bosgraaf to repay the outstanding loan amounts with interest. The court also entered an order of judicial foreclosure. Pursuant to that order, Kirsch and Bosgraaf had 42 days to remit the money judgment or the property would be sold by the court clerk to satisfy the judgment. On May 3, 2013, Sturgis purchased the property at the county clerk sale. Pursuant to the court's order, Sturgis took the property "free and clear of all easements, liens, encumbrances and claims arising since the date the Mortgage was recorded" including those of tenant Lennard Ag. The judgment allowed Kirsch six months to redeem the property.

On the eve of the clerk's foreclosure sale, Lennard Ag informed Sturgis of its belief that the court's order converted its leases into month-to-month leases and that it intended to terminate its leases and vacate the premises on May 31. Sturgis objected and filed a circuit court motion to hold Lennard Ag in contempt and to declare the leases effective with Sturgis as the successor landlord. In response, Lennard Ag conceded that Sturgis had the right and authority to collect rents during Kirsch's redemption period (and therefore continued its payments during that time), but argued that all rights were severed thereafter. The circuit court agreed and denied Sturgis's request to validate and enforce Lennard Ag's leases. The redemption period ended on November 3, 2013, and Lennard Ag moved out.

At the close of the redemption period, Sturgis took action to finalize issues underlying the suit. Specifically, Sturgis calculated an amount still owed by Kirsch for attorney fees under the mortgage agreement, interest, loan principal and other costs that was not covered by the sale of the property. Sturgis argued against reducing the deficiency judgment by the amount of rents collected by assignment during the proceedings. The circuit court ruled that the rents would be deducted from the judgment amount and left the parties to battle regarding the remaining items

to be calculated. Kirsch/Bosgraaf and Sturgis heatedly contested the amount and validity of each line item underlying the judgment, as well as the temporal limits of charging attorney fees and interest. Ultimately, the circuit court determined that Kirsch's payments to date, the proceeds of the foreclosure sale, and the collection of assigned rents exceeded the judgment amount including attorney fees and interest. Therefore, Sturgis was entitled to no additional compensation from Kirsch. The court also determined, however, that Kirsch was not entitled to recompense of the surplus. The surplus was created by Sturgis's collection of rents from the property's tenants. Had Kirsch redeemed the property, ownership of these surplus rents would have reverted to it. As Kirsch did not redeem the property, the court determined that its interest in the rents was terminated.

Sturgis and Kirsch now appeal the circuit court's rulings.

## II. POST-FORECLOSURE LEASE STATUS

In Docket No. 327454, Sturgis continues to argue that the judicial foreclosure did not terminate the tenants' leases and that Lennard Ag breached its leases by terminating at the close of the redemption period. Accordingly, Sturgis challenges the circuit court's denial of its motion to hold Lennard Ag in contempt and for a declaratory judgment in its favor. We review for an abuse of discretion a circuit court's declaratory judgment ruling and a decision whether to hold a party in contempt. *Guardian Environmental Servs, Inc v Bureau of Constr Codes & Fire Safety*, 279 Mich App 1, 6; 755 NW2d 556 (2008); *In re Contempt of Auto Club Ins Ass'n*, 243 Mich App 697, 714; 624 NW2d 443 (2000). We review de novo underlying questions of statutory and contract interpretation. *Sands Appliances Servs, Inc v Wilson*, 463 Mich 231, 238; 615 NW2d 241 (2000).

Sturgis relies on statute, contract, the foreclosure judgment, and common law to support its claim. We address each in turn.

Contrary to Sturgis's urging, MCL 554.231 *et seq.* does not continue the Lennard Ag leases beyond foreclosure. MCL 554.231 makes it "lawful to assign rents . . . under any oral or written leases upon the mortgaged property to the mortgagee, as security in addition to the property described in such mortgage." The statute deems the assignment "binding" on lessees in the event of the mortgagor's default. The statutes in this chapter pertain only to the assignment of *rents*, not of *leases*. They in no way require either a landlord or a tenant to continue a lease post-foreclosure.

For the first time in its appellate reply brief, Sturgis contends that MCL 600.3130 applies to the current action and governs transfer of the lease interest. MCL 600.3130(1) provides that at the close of the foreclosure redemption period, "the deed . . . shall vest in the grantee . . . all the right, title, and interest which the mortgagor had at the time of the execution of the mortgage or at any time thereafter." Sturgis's analysis is cursory and provides no support for the proposition that the Lennard Ag leases fall into the statutory ambit. Moreover, our order granting leave to appeal limited the issues to those "raised in the application and supporting brief." *Sturgis Bldg, Inc v Kirsch Indus Park, LLC*, unpublished order of the Court of Appeals, entered August 21, 2015 (Docket No. 327454). Even if the appeal were not so limited, we would hesitate to review any substantive argument left to such a late point in the proceedings, with no opportunity for

response from the opposing side. See *Kinder Morgan Mich, LLC v City of Jackson*, 277 Mich App 159, 174; 744 NW2d 184 (2007).

In its contract-based argument, Sturgis relies on the "subordination of lease" provisions in Lennard Ag's leases with Kirsch. The provisions state:

> Landlord reserves the right to subject and subordinate this Lease at any time to the lien of any mortgage or mortgages now or hereafter placed on the Premises. . . . Tenant shall also at the request of the Landlord or Landlord's mortgage lender execute an instrument acknowledging assignment by Landlord or Landlord's mortgage lender of all of the rent due hereunder in the event of default by Landlord in any of the terms and conditions of the mortgage or mortgages on the Premises.

Sturgis misinterprets the contract language. This provision does not assign the Kirsch-Lennard Ag *leases* to Sturgis Building; it assigns only the *rents*, while "subject[ing] and subordinat[ing] this Lease . . . to the lien of any mortgage." The Lennard Ag leases thereby rendered the tenant's lease interest inferior to the mortgage interest of Sturgis. See *Black's Law Dictionary* (6th ed), pp 1425-1426 (defining "subject to" and "subordinate"). These lease provisions are entirely consistent with MCL 554.231 *et seq.*

The judicial foreclosure judgment also does not revive Sturgis's claim. The foreclosure judgment provided "[t]he sale shall be free and clear of all easements, liens, encumbrances and claims arising since the date the Mortgage was recorded . . . including: . . . LENNARD AG COMPANY . . . ."[1]

*Black's Law Dictionary* (6th ed), p 527, specifically includes a "lease" within the definition of an "encumbrance": "A claim, lien, charge, or liability attached to and binding real property; *e.g.* a mortgage; judgment lien; mechanics' lien; *lease*; security interest; easement or right of way; accrued and unpaid taxes." (Emphasis added.) A lease is also a "claim" to the property, i.e., a "[m]eans by or through which claimant obtains possession or enjoyment of privilege or thing." *Id.* at 247. The sale pursuant to the foreclosure was therefore "free and clear" of Lennard Ag's leases.

Sturgis also relies on ¶ 16 of the foreclosure judgment, which demands, "The Order for Possession Pending Judgment entered by this court on February 21, 2012, shall remain in full force and effect . . . ." The subject order for possession described that Kirsch "has possession of . . . interests in . . . any contracts for the lease . . . of the Premises . . . and also all the rents acquired." The court ordered Kirsch to "deliver[]" these interests to Sturgis. Sturgis thereby took delivery of the leases and accepted assignment of the right to collect rents. Sturgis's

---

[1] Tenant Iceberg Enterprises had previously entered negotiations with Kirsch to purchase that portion of the property housing its business. When Sturgis filed its circuit court action, Iceberg and Kirsch had reduced a purchase agreement to writing. The court's order provided that this contract alone would survive the foreclosure sale and encumber the property.

acceptance of the leases was only for as long as the leases remained effective. As described below, the leases remained effective only as long as the redemption period.

Sturgis's common-law argument centers on "the doctrine of merger." Sturgis relies heavily on *Dolese v Bellows-Claude Neon Co*, 261 Mich 57; 245 NW 569 (1932), to support this argument. *Dolese* expressly provides, however, that in a foreclosure situation, a lease entered after mortgage creation terminates at the end of the redemption period unless the mortgagor redeems the property. *Id.* at 59. It is undisputed that Sturgis's mortgage predated Lennard Ag's two leases with Kirsch and that Kirsch did not redeem the property. The subject leases therefore terminated when the redemption period expired.

The mortgagee in *Dolese* attempted to avoid this conclusion by arguing "that the mortgage foreclosure was not kept alive; that her interest as purchaser at the mortgage foreclosure sale became merged with the title obtained by the . . . deed; and that her rights in the lease are by virtue of that deed." *Id.* To establish merger, "the intent" of the parties "is the controlling consideration." *Id.* at 60 (quotation marks and citation omitted). In this regard, Sturgis emphasizes the assignment of rent provisions in the Kirsch-Sturgis mortgage and Kirsch-Lennard Ag leases as evidence that everyone involved intended the leases to survive a foreclosure and purchase by Sturgis following a default. This theory fails because assignment of the right to collect rents is not synonymous with the assignment of a lease. There simply is no contractual evidence that Kirsch, Sturgis, and Lennard Ag intended Lennard Ag's leases to survive a foreclosure sale and become an interest of the post-foreclosure owner.[2]

As Sturgis's claimed right to continue Lennard Ag's leases is not supported by the various raised grounds, the circuit court acted within its discretion in denying Sturgis's bid to hold Lennard Ag in contempt and for a declaratory judgment.

### III. FINAL JUDGMENT

In Docket No. 328282, Sturgis and Kirsch both challenge the circuit court's calculation of the surplus/deficiency judgment at the close of the redemption period. Kirsch also challenges the circuit court's decision to not award the surplus to it. Foreclosures by judicial action are equitable in nature. MCL 600.3180. As such, our review is de novo. *Mitchell v Dahlberg*, 215 Mich App 718, 727; 547 NW2d 74 (1996).

Kirsch argues that Sturgis's bid of $2,850,000 at the clerk's sale was a "full credit bid" as the total amount of outstanding principal, accrued interest, and costs and attorney fees *at the time of the sale* amounted to $2,805,018.97. Kirsch complains of the circuit court's inclusion of post-

---

[2] The circuit court relied on *Smith v Mut Benefit Life Ins Co*, 362 Mich 114; 106 NW2d 515 (1960), and *Security Trust Co v Sloman*, 252 Mich 266; 233 NW 216 (1930), to confine Sturgis's rights to the redemption period. *Smith* and *Security Trust* involve the assignment of the right to collect rents and hold that the right severs at the period's expiration. *Smith*, 362 Mich at 125-126; *Security Trust*, 252 Mich at 271-272. Neither case discusses the continuation of leases, however.

sale attorney fees to retroactively deem the sale price "less than" a full credit bid. And Kirsch asserts that the existence of a full credit bid completely alters the legal landscape of this case.

The full credit bid rule has been described as follows:

"When a lender bids at a foreclosure sale, it is not required to pay cash, but rather is permitted to make a credit bid because any cash tendered would be returned to it. If this credit bid is equal to the unpaid principal and interest on the mortgage plus the costs of foreclosure, this is known as a 'full credit bid.' When a mortgagee makes a full credit bid, the mortgage debt is satisfied, and the mortgage is extinguished." [*Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 83; 878 NW2d 816 (2016), quoting *New Freedom Mtg Co v Globe Mtg Corp*, 281 Mich App 63, 68; 761 NW2d 832 (2008), citing *Alliance Mtg Co v Rothwell*, 10 Cal 4th 1226, 1238-1239; 44 Cal Rptr 2d 352; 900 P2d 601 (1995).]

If Sturgis's bid was a "full credit bid," then the mortgage documents would have been extinguished at the time of the clerk's sale. The assignment of rents provision would have disappeared and Sturgis would not be entitled to keep the rents collected during the redemption period, according to Kirsch. The mortgage provisions awarding Sturgis attorney fees would also disappear.

The Michigan cases applying the full credit bid rule to extinguish mortgages at the time of the foreclosure sale involve foreclosures by advertisement and sheriff's sales. We could find no precedent for applying the rule in a judicial foreclosure action. See *Bank of America*, 499 Mich 74; *Smith v Gen Mtg Corp*, 402 Mich 125; 261 NW2d 710 (1978); *Citizens Bank v Boggs*, 299 Mich App 517; 831 NW2d 876 (2013); *New Freedom Mortgage Corp*, 281 Mich App 63; *Emmons v Lake States Ins Co*, 193 Mich App 460; 484 NW2d 712 (1992); *Bank of Three Oaks v Lakefront Props*, 178 Mich App 551; 444 NW2d 217 (1989).

We discern no ground to now extend the full credit bid rule to judicial foreclosure actions. There are numerous differences between a foreclosure by judicial action and a foreclosure by advertisement, making the extension of the full credit bid rule inappropriate. A mortgagee initiates a foreclosure by advertisement by publishing a notice that the mortgage will be foreclosed by sale of the property. 1 Cameron, Michigan Real Property Law (3d ed), § 18.81, p 746. After notice has been published for four successive weeks, the property is sold. MCL 600.3208. There is no court involvement unless after the sale, multiple parties claim rights to a surplus, MCL 600.3252, or a deficiency judgment is sought against the mortgagor, MCL 600.3280.

In a judicial foreclosure, on the other hand, the property is not sold until after a complaint has been filed and a court order entered. See MCL 600.3115. In the foreclosure judgment, the court names the party or parties that are personally liable for the mortgage debt. MCL 600.3150. The judgment must state that if the sale proceeds are insufficient to satisfy the principal, interest, and costs, there shall be execution in the amount of the deficiency. *Id.* Similarly, the judgment must provide for court intervention in allocating any surplus from the sale. MCL 600.3135. Ultimately, in a judicial foreclosure, the court calculates the amount due under the mortgage at the time of the foreclosure sale as well as the amount of any surplus or deficiency at the close of

the redemption period in the event the mortgagor does not redeem the property. See *Stewart v Isbell*, 155 Mich App 65, 81; 399 NW2d 440 (1986). Given the court's integral role in calculating the debt amount in a judicial foreclosure, it would make little sense to extinguish the mortgage at a point when the mortgagee has had to rely on its solo efforts to calculate its bid.

As the full credit bid rule does not apply, the mortgage was not extinguished by the clerk's sale in this case. The court could therefore rely on the mortgage provisions requiring Kirsch to pay Sturgis's costs and attorney fees in an action to enforce Kirsch's payment obligations. The judicial foreclosure judgment specifically included post-sale attorney fees as part of the judgment amount: Sturgis "shall be awarded actual and reasonable attorney fees and expenses after the Clerk's sale . . . and such award shall become part of this Judgment." Inclusion of such post-sale fees was in the court's equitable power.

We similarly reject Kirsch's contention that Sturgis's authority to collect rents by assignment was extinguished. In fact, Kirsch specifically agreed in the mortgage that it "knowingly and voluntarily waive[d] any right . . . to collect any rents or income from the Property during the pendency of any foreclosure proceedings and during any applicable redemption period," further supporting the court's order. This mutually agreed upon contractual release of rights to rents also negates Kirsch's appellate claim of entitlement to these funds as a surplus judgment.

Even though Kirsch was not entitled to pocket the surplus rents, this does not mean that these collected rents could not be credited against the judgment amount. As noted, the circuit court considered the rents collected by Sturgis as a credit to reduce Kirsch's indebtedness. Sturgis challenges this credit, the absence of which would lead to a deficiency judgment that Kirsch would remain liable for. However, the credit of collected rents against the judgment amount was impliedly permitted by the mortgage documents. The assignment of rents was "given as collateral security." The mortgage gave Sturgis "discretion" to allocate the rents collected to satisfy various items, including: "the cost and expenses incurred by [Sturgis] in exercising its rights under this Mortgage, payment of the interest and principal due under the Note, payment of any other portion of the Obligations, and payment of expenses incurred in preserving the Property." The rent payments were credited to cover several of these permissible items. Given that the court's action was permitted by the parties' contract, we need not consider the parties' extensive common-law arguments in this regard.

Kirsch raises several challenges to specific items charged against it in calculating the surplus/deficiency judgment. The circuit court ultimately determined that Sturgis retained a surplus of several hundred thousand dollars. Eliminating or reducing the challenged items would only increase that surplus. However, as Kirsch was not legally entitled to recover any surplus, its challenges to the line items are moot.

Sturgis cross-appeals from the circuit court's final judgment, contending that the court should have declared a deficiency of $89,041.84. However, Sturgis specifically requested that this Court only consider this challenge if this Court vacates or reverses the circuit court's final judgment based on Kirsch's appeal. As we discern no error in the circuit court's November 2014 judgment, we need not consider Sturgis's additional challenge.

We affirm. As the prevailing parties, Lennard Ag may tax costs pursuant to MCR 7.219 in Docket No. 327454 and Sturgis Building in Docket No. 328282 (in relation to Kirsch's appeal alone).

/s/ Deborah A. Servitto
/s/ Jane E. Markey
/s/ Elizabeth L. Gleicher