BANK OF THREE OAKS v LAKEFRONT PROPERTIES

Docket Nos. 105692, 105695. Submitted November 8, 1988, at Lansing. Decided July 18, 1989.

Lakefront Properties, an Illinois partnership and Michigan co-partnership, executed a mortgage on certain property to the Bank of Three Oaks. Kim E. Cook, Terry H. Cook, and others, as part of the same transaction, executed a form guarantee prepared by the bank guaranteeing payment of the liability of Lakefront if Lakefront defaulted on the loan. Lakefront defaulted, and the bank foreclosed by advertisement. At the foreclosure sale, the bank bid $147,129.42, the amount of principal and interest owing to the bank on the note and mortgage as of that date, plus the costs of foreclosure and statutory attorney fees related to the foreclosure. Following expiration of the redemption period, the sheriff's deed became operative, making the bank the titled owner of the property. The bank sold the property for $150,000, and filed a complaint against Lakefront Properties, the Cooks, and the other guarantors in Berrien Circuit Court seeking to recover an alleged deficiency of $29,349.30. The sum sought by the bank included interest which had accrued on the mortgage debt after the date of the foreclosure sale, and after the expiration of the redemption period, as well as additional insurance costs, taxes, and actual attorney fees. The court, Casper O. Grathwohl, J., ruled that (1) the bank's bid of the total amount due it as of the time of the foreclosure sale did not satisfy the underlying debt so as to discharge the individual guarantors of the debt, (2) the guarantee executed by the guarantors afforded the bank greater protection than the note and mortgage alone, (3) the bank was entitled to recover those expenses and costs which were incurred or accrued up through the date the sheriff's deed became operative, but not any of the expenses incurred in the subsequent resale of the property to a third party, and (4) the bank was not entitled to actual attorney fees in the matter.

REFERENCES

Am Jur 2d, Mortgages §§ 510 *et seq.*, 621, 631, 632; Suretyship § 94. See the Index to Annotations under Mortgages; Suretyship.

Defendants Cook filed an appeal, and the remaining defendants filed a separate appeal. The appeals have been consolidated.

The Court of Appeals *held:*

1. The bank's purchase of the property for the entire amount of the outstanding indebtedness extinguished Lakefront's debt and mortgage. Because Lakefront did not exercise its right of redemption following the foreclosure sale, it is not liable for interest, taxes, and insurance premiums accruing after the date of the foreclosure sale.

2. The guarantors cannot be liable for a liability which Lakefront never incurred. Because Lakefront at no time became liable for postforeclosure sale interest and expenses, neither did the guarantors. The fact that the language of the guarantee form executed by the guarantors was quite broad and extended to any debts, obligations, and liabilities of Lakefront arising out of credit granted by the bank does not serve to create liability on the part of the guarantors where none exists on the part of Lakefront.

3. In proceeding to foreclose by advertisement, and bidding the full amount of the debt, the bank risked the possibility of absorbing interest and expenses incurred following the sale if Lakefront failed to redeem.

Reversed and remanded for entry of judgment in favor of defendants.

1. MORTGAGES — FORECLOSURE SALES — SATISFACTION OF DEBT.

A mortgagor's debt is satisfied when the mortgaged property is purchased at a foreclosure sale for an amount equal to the amount due on the mortgage.

2. MORTGAGES — FORECLOSURE SALES — EXTINGUISHMENT OF MORT-GAGES.

A mortgage is extinguished at the time the mortgaged property is sold at a foreclosure sale.

3. MORTGAGES — FORECLOSURE BY ADVERTISEMENT — POSTSALE COSTS — DEFICIENCY ACTIONS.

Upon foreclosure by advertisement and expiration of the redemption period without redemption by the mortgagor, the mortgagor cannot be held liable in a deficiency action for interest, taxes, or insurance costs accruing after the foreclosure sale.

4. MORTGAGES — FORECLOSURE SALES — POSTSALE COSTS — SURETY-SHIP AND GUARANTEE.

Guarantors of a mortgage debt who are thus secondarily liable for payment of the debt have no liability for postforeclosure

sale interest and expenses where the mortgagor's debt was satisfied by purchase of the property at the foreclosure sale for the amount due on the mortgage.

*Donald L. Bleich,* for plaintiff.

*Lawrence Frankle,* for Lakefront Properties.

*Kinney, Cook, Lindenfeld & Kelley* (by *Mark S. Bowman*), for Kim and Terry Cook.

Before: MACKENZIE, P.J., and WEAVER and E. A. QUINNELL,* JJ.

PER CURIAM. Defendants appeal as of right from a judgment holding defendants jointly and severally liable to plaintiff in the sum of $15,550.48 plus statutory interest and costs. We reverse.

This case was tried under the following statement of stipulated facts:

A Note and a Mortgage to the Plaintiff Bank of Three Oaks were executed by Defendant Lakefront Properties, an Illinois partnership and a Michigan co-partnership, on November 28, 1983. As part of that transaction, and on that same date, the individual partner Defendants also executed a form Guarantee prepared by the Bank. While those documents were not formally admitted as evidence at trial, they were annexed to the Complaint filed by the Bank, and their authenticity was admitted. All three documents were standard printed forms, prepared and/or provided by the Bank.

After default, the Bank foreclosed by advertisement. At the foreclosure sale held on August 6, 1985, the Bank bid $147,129.42, which was the amount of principal and interest owing to the Bank on the Note and Mortgage as of that date, plus the costs of foreclosure and statutory attorneys fees related to the foreclosure.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

The redemption period expired, and the sheriff's deed became operative, on February 7, 1986, at which time the Bank became the titled owner of the property. Subsequent to the expiration of the redemption period, the Bank sold the property for $150,000.00, with the closing of that sale transaction taking place on June 2, 1986.

On September 19, 1986, the Bank filed its Complaint against all these Defendants. On November 12, 1986, by consent, Plaintiff filed its First Amended Complaint, that being a two-count action: in Count I, the Bank sought to recover an alleged "deficiency" of $29,349.30, while in Count II, the Bank sought to recover the same amount by virtue of an alleged breach of the Guarantee executed by the individual Defendants. That sum sought by the Bank included interest which had accrued on the mortgage debt after the date of the foreclosure sale, and after the expiration of the redemption period, as well as additional insurance costs, taxes, and actual attorneys' fees. All Defendants thereafter filed their Answers and Affirmative Defenses to the First Amended Complaint, denying liability therefor.

The parties synthesize the trial court's ruling as follows:

[F]irst, the Bank's bid of the total amount due it as of the time of the foreclosure sale does not satisfy the underlying debt, so as to discharge the individual guarantors of the debt. Second, the Guarantee executed by the individual guarantor/ Defendants is not coterminous with the Note and Mortgage executed by the Partnership, and affords the Bank greater protection than the Note and Mortgage alone. Third, the Bank is entitled to recover only those expenses and costs which were incurred or accrued up through February 7, 1986, that being the date the sheriff's deed became operative, but not any of the expenses incurred in the subsequent resale of the property to a third party. Finally, the Court also determined that the

Bank was not entitled to actual attorneys' fees in this matter.

Defendants Trochelman, Ettington, and Kim and Terry Cook executed a contract guaranteeing the payment of the liability of defendant Lakefront Properties to the plaintiff Bank of Three Oaks. Our first inquiry is what, if any, was the liability of Lakefront to the bank following foreclosure of the property, sale, and expiration of the redemption period without redemption?

When property is purchased at a foreclosure sale for an amount equal to the amount due on the mortgage, the debt is satisfied. *Guardian Depositors Corp v Hebb,* 290 Mich 427, 432; 287 NW 796 (1939); *Powers v Golden Lumber Co,* 43 Mich 468, 471; 5 NW 656 (1880). Moreover, the mortgage is extinguished at the time of the foreclosure sale. *New York Life Ins Co v Erb,* 276 Mich 610, 615; 268 NW 754 (1936). Here, the bank's purchase of the property for the entire amount of the outstanding indebtedness extinguished Lakefront's debt and mortgage.

The bank argues that notwithstanding the fact that Lakefront's note and mortgage were extinguished at the date of sale, Lakefront became liable for interest, taxes, and insurance premiums accruing between the date of the sale and the date the redemption period expired. We disagree. The Legislature has expressly required a mortgagor to pay for such items if the mortgagor exercises its right of redemption. MCL 600.3240(1) and (2); MSA 27A.3240(1) and (2). However, no such statutory requirement exists when, as here, the mortgagor opts not to redeem the premises.

The power to render a deficiency decree in foreclosure proceedings is entirely statutory. *Harrow v Metropolitan Life Ins Co,* 285 Mich 349, 356-357;

280 NW 785 (1938). The statutory authority is found in MCL 600.3280; MSA 27A.3280:

> When, in the foreclosure of a mortgage by advertisement, any sale of real property has been made after February 11, 1933, or shall be hereafter made by a mortgagee, trustee, or other person authorized to make the same pursuant to the power of sale contained therein, at which the mortgagee, payee or other holder of the obligation thereby secured has become or becomes the purchaser, or takes or has taken title thereto at such sale either directly or indirectly, and thereafter such mortgagee, payee or other holder of the secured obligation, as aforesaid, shall sue for and undertake to recover a deficiency judgment against the mortgagor, trustor or other maker of any such obligation, or any other person liable thereon, it shall be competent and lawful for the defendant against whom such deficiency judgment is sought to allege and show as matter of defense and set-off to the extent only of the amount of the plaintiff's claim, that the property sold was fairly worth the amount of the debt secured by it at the time and place of sale or that the amount bid was substantially less than its true value, and such showing shall constitute a defense to such action and shall defeat the deficiency judgment against him, either in whole or in part to such extent. This section shall not affect nor apply to the rights of other purchasers or of innocent third parties, nor shall it be held to affect or defeat the negotiability of any note, bond or other obligation secured by such mortgage, deed of trust or other instrument. Such proceedings, as aforesaid, shall in no way affect the title of the purchaser to the lands acquired by such purchase. This section shall not apply to foreclosure sales made pursuant to an order or decree of court nor to any judgment sought or rendered in any foreclosure suit nor to any chancery sale heretofore or hereafter made and confirmed.

In *New York Life Ins Co v Erb, supra,* involving a foreclosure by advertisement, the Michigan Supreme Court distinguished interest and taxes accruing prior to a foreclosure sale from interest and taxes accruing after the sale. In a deficiency action, the mortgagor is properly held liable for the former, but has no liability for the latter. *Erb, supra,* pp 614-615.[1]

Following the decision in *Erb, supra,* the Legislature amended the predecessor to § 3280 but did not include any language such as now appears in § 3240(2) which would nullify the *Erb* Court's suggestion that a mortgagee seeking a deficiency judgment is not entitled to interest and taxes accruing after the foreclosure sale. We believe the statutory scheme reveals the legislative intent that, upon foreclosure by advertisement and expiration of the redemption period without redemption by the mortgagor, the mortgagor cannot be held liable in a deficiency action for interest, taxes, or insurance costs accruing after the foreclosure sale.

We now turn to address the issue of the liability of the remaining defendants (the guarantors) to the bank. The trial court found that the language of the guarantee was unambiguous, broader and more comprehensive than that of the note and mortgage, and extended to liabilities incurred following the foreclosure sale.

The pertinent language follows:

> The undersigned, jointly and severally hereafter called the "Guarantor", in order to induce the Beneficiary to extend or continue to extend finan-

---

[1] While the precise issue of deficiency liability for postsale taxes and interest was not before the Court in *Erb,* in its opinion, the Court strongly implies that no such liability would lie against the mortgagor in citing *Walton v Bagley,* 47 Mich App 385; 11 NW 209 (1882), *Wood v Button,* 205 Mich 692; 172 NW 422 (1919), and *Mortgage & Contract Co v First Mortgage Bond Co,* 256 Mich 451; 240 NW 39 (1932).

cial accommodations to the Borrower, hereby guarantees to the Beneficiary the full and prompt payment of all loans, drafts, overdrafts, notes, bills, and all other debts, obligations, and liabilities of every kind and description, whether now owing or hereafter arising out of credit previously, contemporaneously, or hereafter granted by the Beneficiary to the Borrower, whether arising from dealings between the Beneficiary and the Borrower, or from dealings by which the Beneficiary may become in any manner whatever a creditor of the Borrower.

This shall be a continuing Guarantee and shall not be affected by any payment made by the Borrower to the Beneficiary, or whether in the form of cash, property, renewal, or other consideration.

If this Guarantee should be signed by more than one person, all persons having executed the agreement acknowledge that their obligation hereunder shall be joint and several. Each of the parties executing this Guarantee expressly authorizes the Beneficiary to proceed, in its sole and absolute discretion against each or any of them, and further agrees that if the Beneficiary shall proceed against any one of them the other(s) hereby waives any defense of election of remedies and agrees to continue to be liable under the terms of this agreement for any amount remaining owing between the Borrower and the Beneficiary.

We agree with the trial court that the language of the guarantee contract is quite broad and extends to any debts, obligations, and liabilities of Lakefront "arising out of credit . . . granted by the [bank]." Logically, however, the guarantors cannot be liable for a liability which Lakefront never incurred. Because we have previously determined that Lakefront at no time became liable for

postforeclosure sale interest and expenses, neither did the guarantors.[2]

Moreover, we are not persuaded that postforeclosure sale interest and expenses represent "liabilities . . . arising out of credit . . . granted by the [bank]" which would fall within the scope of the guarantee. Anyone could have bought Lakefront's property at the foreclosure sale and would have then incurred the same expenses of which the bank now complains. This makes it apparent that such expenses constitute liabilities arising out of the decision to purchase the property at the foreclosure sale. That decision, whether made by the bank or a third party, is wholly independent from the original credit transaction the guarantee covered.

*Rose v Ramm,* 254 Mich 259; 237 NW 60 (1931), cited by plaintiff is inapposite. In *Rose,* the plaintiff sought and won $759.32 from the guarantor of payment under a land contract forfeited by the vendee. The $759.32, however, was comprised of taxes and other sums which were *obligations of the vendee, Id.,* p 262, and therefore fell within the scope of the guarantee. The situation presented here—where the primary obligor had no obligation to pay the requested sums—is distinguishable.

A situation similar to the instant case arose in

[2] Because the guarantors were secondarily liable for Lakefront's primary liability and because liability for postsale taxes and interest for expenses never arose on the part of Lakefront, and therefore a deficiency never existed, we do not need to consider whether defendant guarantors would be able to evoke the deficiency defense set forth in MCL 600.3280; MSA 27A.3280 in an action to recover a deficiency. While this Court has had occasion to consider this issue in the context of a suit to recover a deficiency from a guarantor under the Uniform Commercial Code, *Honor State Bank v Timber Wolf Construction Co,* 151 Mich App 681; 391 NW2d 442 (1986), the issue as to whether a guarantor is a defendant entitled to invoke the remedies set forth in § 3280 has not arisen. Other jurisdictions which have considered the issue have reached varying results. See 49 ALR3d 554.

*Chabut v Chabut,* 66 Mich App 440; 239 NW2d 401 (1976), where the defendant bank loaned money to a corporation and obtained as security a mortgage on the corporation's office building. As additional security, the plaintiffs, as accommodation endorsers, pledged certain stock. When the corporation defaulted, the bank commenced foreclosure by advertisement. At the foreclosure sale, the bank bid an amount less than the outstanding indebtedness. When the redemption period expired on the real estate, the plaintiffs (the accommodation endorsers), redeemed the pledged stock by payment to the bank of the balance of the outstanding indebtedness in order to prevent the defendant bank from selling the stock to satisfy the deficiency resulting from the foreclosure sale. The plaintiffs subsequently commenced suit against the bank, alleging that the amount bid by the bank for the real estate was substantially less than the property's fair market value. This Court affirmed the lower court's determination that the bank purchased the real estate for less than its fair market value and further held:

> Based on the law as herein stated, it is our opinion that the amended complaint of the plaintiffs did state a valid claim upon which they could recover from the defendant bank. As accommodation endorsers, the plaintiffs were sureties for the obligation. But as sureties, they were entitled to be afforded protection before having the pledged stock used to satisfy the debt. Since the bank chose not to attempt to bid in the property at the fair market value on the date of the sheriff's sale and since the trial court found that the property was worth the entire amount of the indebtedness at the time of the sheriff's sale, no deficiency existed. The absence of a deficiency removed defendant bank's claim against the additional pledge collateral and, therefore, the money it received from the

plaintiffs when they redeemed this collateral was wrongfully obtained and the judgment of the trial court was correct. [*Id.,* p 455.]

Likewise, here, with the bank's bid at the foreclosure sale of the entire amount of the indebtedness, no deficiency existed and the absence of a deficiency removed any potential claim of the bank under the guarantee.

Plaintiff justifiably points out that during the time between the foreclosure sale and the expiration of the redemption period the bank held only equitable, and not legal, title to the property and accordingly was precluded from selling the property pending expiration of the redemption. *Bankers Trust Co of Detroit v Rose,* 322 Mich 256, 260; 33 NW2d 783 (1948). This fact is simply one of the risks inherent in the choice of foreclosure by advertisement. Other options were available to the bank. *Guardian Depositors Corp v Powers,* 296 Mich 553, 560; 296 NW 675 (1941). In proceeding to foreclose by advertisement and bidding the full amount of the debt, the bank risked the possibility of absorbing interest and expenses incurred following the sale if Lakefront failed to redeem.

Reversed and remanded for entry of judgment in favor of defendants.