# STATE OF MICHIGAN

# COURT OF APPEALS

THE ANGELA SINACOLA LIVING TRUST and
THE GUY SINACOLA LIVING TRUST,

        Plaintiffs-Appellants,

v

PNC BANK, N.A., and PNC MORTGAGE,
alleged successor to NATIONAL CITY
MORTGAGE COMPANY,

        Defendants-Appellees.

UNPUBLISHED
November 13, 2014

No. 317481
Oakland Circuit Court
LC No. 2012-127118-CH

Before: WHITBECK, P.J., and FITZGERALD and MURRAY, JJ.

PER CURIAM.

In this action challenging the foreclosure on their property, plaintiffs, The Angela Sinacola Living Trust and The Guy Sinacola Living Trust, appeal as of right the July 11, 2013 order[1] of the Oakland Circuit Court granting defendants' motion for summary disposition and dissolving the temporary injunction tolling plaintiffs' redemption period. Resolution of this case centers on whether defendants violated certain statutory recording requirements in conducting a foreclosure by advertisement and, if so, whether plaintiffs suffered prejudice as a result. Because we hold that there was no statutory violation in the first instance, we affirm.

## BACKGROUND

This case is about whether defendants dotted their "I's" and crossed their "T's" in pursuing a foreclosure by advertisement on plaintiffs' property in Clarkston (the "property"). Plaintiffs first acquired their interest in the property on April 15, 2003, by quitclaim deed from Angela Sinacola. Earlier that same day, Ms. Sinacola had taken out a mortgage on the property in favor of National City Mortgage Services Co. for approximately $793,000. Over the next few years, the identity of the mortgagee changed several times through an assignment as well as through several ensuing mergers involving the assignee.

---

[1] Although signed on July 10, 2013, the order did not appear in the register of actions until July 11, 2013.

First, the Oakland County Records reflect that on August 27, 2004, the mortgage was assigned to National City Mortgage Co., an entity defendants refer to as "Oldco." This is the only assignment on record. On January 4, 2005, this assignee changed its name to National City Mortgage, Inc., which in turn merged into National City Real Estate Services, LLC. National City Bank—the sole member of National City Real Estate Services—subsequently merged into defendant PNC Bank, NA, and National City Real Estate Services was dissolved.[2]

Some time after these mergers, plaintiffs defaulted on the mortgage. The notice of default dated June 2, 2010, identifies defendant PNC Mortgage (a division of defendant PNC Bank) as the "servicer and owner, or authorized representative of the mortgage owner." Despite receiving this notice, plaintiffs still failed to make payments. Accordingly, a notice of a pending foreclosure sale was provided on April 1, 2011. Over two months later, on June 12, 2011, Ms. Sinacola requested PNC Bank to disclose the name of the current "private investor" for the mortgage. PNC Mortgage (apparently the division responsible for responding) declined to release that information, and on July 12, 2011, PNC Bank foreclosed on the property by advertisement with a full credit bid for approximately $708,000. The Sheriff's Deed from the sale clearly reflects PNC Bank as the party of interest and further identifies PNC Bank in the following way:

> PNC Bank, National Association, successor by merger to National City Bank, successor by merger to National City Mortgage Co., formerly known as NCMC NewCo., Inc., successor in interest to National City Mortgage Co., subsequently known as National City Mortgage, Inc.

Despite this detailed summary of PNC Bank's involvement, the property's chain of title identified neither PNC Mortgage nor PNC Bank as having any interest at the time of foreclosure, and it is this fact upon which plaintiffs' entire case hinges.

PROCEEDINGS

Less than two months before the expiration of the one-year redemption period, plaintiffs filed a two-count complaint against defendants. Count I alleged that the foreclosure was void because the property's chain of title disclosed neither PNC Bank nor PNC Mortgage's interest as purportedly required by MCL 600.3204(3) (requiring the party foreclosing by advertisement to record its assignment of the mortgage if that party was not the original mortgagee). Count II requested the court quiet title in plaintiffs' favor since PNC Bank and PNC Mortgage lacked a recorded interest as of July 11, 2011. Plaintiffs also sought and obtained temporary injunctive relief—extended periodically throughout the proceedings—tolling the redemption period, otherwise set to expire on July 12, 2012.

---

[2] Defendants note that an entity formerly known as NCMC, NewCo, Inc., took over the name National City Mortgage Co. after "Oldco" abandoned that name. The new National City Mortgage Co. later merged into National City Bank, which as noted above, merged into PNC Bank on November 6, 2009.

Defendants subsequently moved for summary disposition and for dissolution of the preliminary injunction. Defendants argued that because PNC Bank acquired its interest in the property "by operation of law," MCL 600.3204(3) was inapplicable and no recording of PNC Bank's interest before the foreclosure was necessary. Alternatively, defendants claimed that plaintiffs could not show prejudice where they were aware PNC Mortgage was servicing the mortgage as early as June 2, 2010, by virtue of the notice of default, and plaintiffs had otherwise filed their complaint before the expiration of the redemption period despite having made no payments for three years.

Plaintiffs responded that by merging with National City Bank, PNC Bank acquired its interest affirmatively and voluntarily rather than "by operation of law," and PNC Bank was therefore required to record its interest in accordance with MCL 600.3204(3). The failure to record this interest resulted in prejudice, plaintiffs continued, because plaintiffs were unable to determine the actual note holder which in turn potentially subjected them to "double liability."

Defendants replied that plaintiffs had conflated a voluntary bank merger with a voluntary purchase and sale agreement, and had otherwise failed to demonstrate how any prejudice flowed from the failure to record PNC Bank's interest. Defendants further identified the current investor as Bank of New York Mellon in the event the court considered that to be a material fact.

At the conclusion of the ensuing motion hearing, the trial court ruled in defendants' favor, summarily concluding that plaintiffs faced no potential for double liability and therefore could not establish the prejudice necessary to void the foreclosure. An order was subsequently entered granting defendants' motion, dissolving the preliminary injunction and dismissing plaintiffs' case. This appeal followed.

ANALYSIS

Plaintiffs initially argue that because PNC Bank voluntarily acquired its interest in the property, the failure to record that interest rendered the foreclosure by advertisement voidable under MCL 600.3204(3). Although defendants moved for summary disposition below under both MCR 2.116(C)(8) and (10), resolution of this issue (including the identification of the parties involved in the mergers) required review of evidence beyond the pleadings. Accordingly, our review falls under the standard for subrule (C)(10).[3] *Espinoza v Thomas*, 189 Mich App 110, 114-115; 472 NW2d 16 (1991).

---

[3] Although the trial court ruled only on the secondary issue of prejudice, the parties properly raised—both below and on appeal—the preliminary issue of whether a recording deficiency rendered the foreclosure voidable. See *Kim v JPMorgan Chase Bank, NA*, 493 Mich 98, 113-116; 825 NW2d 329 (2012). Thus, this issue is properly before us. See *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994) (holding that a trial court's failure to rule on an issue does not preclude appellate review where that issue was properly raised).

This Court reviews a trial court's ruling on a motion for summary disposition under MCR 2.116(C)(10) de novo. *McCoig Materials, LLC v Galui Const, Inc*, 295 Mich App 684, 693; 818 NW2d 410 (2012). "A motion for summary disposition pursuant to MCR 2.116(C)(10) should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Curry v Meijer, Inc*, 286 Mich App 586, 590; 780 NW2d 603 (2009) (citation omitted). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). In reviewing this issue, the Court considers all of the pleadings, affidavits, depositions, admissions and other documentary evidence. *Corely v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). "Where the burden of proof rests with the nonmoving party, that party must respond with documentary evidence to demonstrate the existence of a genuine issue of material fact for trial. The failure of the nonmoving party to so respond results in the entry of judgment for the moving party." *Curry*, 286 Mich App at 591 (citation omitted).

The prerequisites that must be satisfied to foreclose by advertisement are set forth in Michigan's foreclosure by advertisement statute, MCL 600.3201 *et seq*. Among that statute's many requirements, only its recording provisions are germane to plaintiffs' preserved arguments on appeal. Specifically, § 3204(1)(c) requires "[t]he mortgage containing the power of sale [to be] properly recorded." Likewise, § 3204(3) requires that where the foreclosing party is not the original mortgagee, the record chain of title must reflect the assignment of the mortgage to the foreclosing party. As § 3204(3) provides:

> If the party foreclosing a mortgage by advertisement is not the original mortgagee, a record chain of title shall exist prior to the date of sale under [MCL 600.3216] evidencing the assignment of the mortgage to the party foreclosing the mortgage.

Thus, "a mortgagee cannot validly foreclose a mortgage by advertisement before the mortgage and all assignments of that mortgage are duly recorded." *Kim v JPMorgan Chase Bank, NA*, 493 Mich 98, 106; 825 NW2d 329 (2012). Not every interest held by a foreclosing party who was not the original mortgagee falls within the ambit of § 3204(3), however. To the contrary, § 3204(3)'s recording requirement is inapplicable if the transfer of title to the foreclosing party occurs by operation of law. *Id*. at 108-116. A transfer takes place by operation of law if it "occurs unintentionally, involuntarily, or through no affirmative act of the transferee." *Id*. at 110.

Our Supreme Court's decision in *Kim* is instructive in distinguishing whether a transfer implicates the recording requirement of § 3204(3). There, the Federal Deposit Insurance Corporation (FDIC) was appointed receiver for Washington Mutual's holdings, including the mortgage at issue in that case. *Id*. at 103. Although the FDIC had the statutory authority under 12 USC 1821 to transfer Washington Mutual's assets "without any approval, assignment, or consent," the FDIC instead transferred virtually all of those assets, including the mortgage, to Chase through a Purchase and Assignment Agreement. *Id*. Chase then foreclosed on the mortgage by advertisement without ever recording the assignment. *Id*. at 104. Our Supreme Court held that Chase acquired the mortgage voluntarily rather than by operation of law because the assets "did not pass to [Chase] without any act of [Chase's] own or regardless of [Chase's]

actual intent." *Id*. at 111 (citations and internal quotation marks omitted). The Court observed that had Chase not "willingly purchased [the assets], it would not have come into possession of plaintiffs' mortgage." *Id*. at 110-111. Accordingly, Chase's failure to record its interest rendered the foreclosure voidable. *Id*. at 115.

In this case, there is no question that the foreclosing party—PNC Bank—was not the original mortgagee. Likewise, it is undisputed that the chain of title did not identify PNC Bank as having any interest in the property before the foreclosure. However, plaintiffs have failed to rebut that PNC Bank derived its interest in the property through a series of mergers involving the original assignee, whose interest was duly recorded.[4] This fact is dispositive. Indeed, in finding that Chase acquired its interest voluntarily, the *Kim* Court expressly distinguished the acquisition of a mortgage by a Purchase and Assignment Agreement from an acquisition by merger because during a merger, the asset transfer "occur[s] without any voluntary or affirmative action by defendant . . . ." *Kim*, 493 Mich at 111.

This is exactly what happened here. PNC Bank acquired its interest through a series of mergers, and as a result, acquired the mortgage by operation of law in accordance with federal statute—specifically, the National Banking Act, 12 USC 1 *et seq*.[5] Indeed, on this very point, 12 USC 215a(e) provides that (subject to certain conditions not pertinent here), in the event of a merger, the assets of the old bank transfer to the new entity solely by virtue of the merger itself. As § 215a(e) sets forth in relevant part:

> The corporate existence of each of the merging banks or banking associations participating in such merger shall be merged into and continued in the receiving association and such receiving association shall be deemed to be the same corporation as each bank or banking association participating in the merger. All rights, franchises, and interest of the individual merging banks or banking associations in and to every type or property . . . *shall be transferred to and vested*

---

[4] While plaintiffs argue that PNC Bank voluntarily purchased the assets of National City before any merger occurred, they rely wholly on a newspaper article in support of that assertion. That is insufficient, however. See *SSC Assoc Ltd Partnership v Detroit Gen Retirement Sys*, 192 Mich App 360, 363-364; 480 NW2d 275 (1991) (explaining that documentary evidence, admissible in content, is necessary to defeat a motion for summary disposition under MCR 2.116(C)(10); opinions and inadmissible hearsay will not suffice); *People v Burt*, 89 Mich App 293, 295-296; 279 NW2d 299 (1979) ("[N]ewspapers are [generally] hearsay evidence of the facts stated within them and are not admissible in evidence to prove such facts"); see also *Detroit v Larned Assoc*, 199 Mich App 36, 39-41; 501 NW2d 189 (1993) (same). Even worse, the article at least once references PNC Bank's acquisition of the assets as an "[a]n M and A deal," i.e., a merger and acquisition. Thus, plaintiffs failed to rebut that PNC Bank acquired the mortgage by virtue of the mergers rather than through a prior, separate sale.

[5] The National Banking Act governs the corporate existence of the entity resulting from the merger of two or more national banks. See *White v Bank of America, NA*, ___ F Supp 2d ___, ___ (ND Ga, 2013), 2013 WL 6796460.

*in the receiving association by virtue of such merger without any deed or other transfer.* The receiving association, upon the merger and without any order or other action on the part of any court or otherwise, shall hold and enjoy all rights of property, franchises, and interests . . . in the same manner and to the same extent as such rights, franchises, and interests were held or enjoyed by any one of the merging banks or banking associations at the time of the merger . . . . [Emphasis added.]

The plain language of this statute could not more clearly provide that a merger results in the automatic transfer of assets under the circumstances involved here. And, indeed, the *Kim* Court cited this very federal provision in observing that had the FDIC merged Washington Mutual with Chase (rather than execute a Purchase and Transfer Agreement), "[t]he transaction could have constituted a transfer by operation of law under traditional banking and corporate law." *Kim*, 493 Mich at 111, citing 12 USC 215a(e). Accord *White v Bank of America, NA*, __ F Supp 2d __, __ (ND Ga, 2013) 2013 WL 6796460 ("As a result of the merger, by operation of law [under 12 USC 215a(e)], BANA acquired the assets, rights and liabilities of BACHLS, including the Security Deed"); *Dragone v PNC Bank, National Ass'n*, unpublished opinion of the United States District Court for the District of Massachusetts, issued June 7, 2013 (Docket No. Civ. A. 11-12194-RWZ), 2013 WL 2460565 ("National City Mortgage Co. subsequently merged with and into National City Bank . . . which became the holder of the mortgage by operation of law. See 12 USC 215a(e)"); see also 15 Fletcher Cyclopedia on the Law of Corporations § 7088, p 118 ("The effect of the merger statutes is such that once the conditions for merger have been met, title to the property of the merged corporation passes to the surviving corporation by operation of law.").

In arguing that PNC Bank acted voluntarily and affirmatively in conducting the merger, then, Plaintiffs have conflated the voluntary act of merger with the automatic transfer of assets resulting from that merger. It is the latter which occurs by operation of law and which in this case precludes the application of MCL 600.3204(3) under *Kim*. We may affirm the trial court on this ground alone. See *Messenger v Ingham Co Prosecutor*, 232 Mich App 633, 643; 591 NW2d 393 (1998) ("When this Court concludes that a trial court has reached the correct result, this Court will affirm even if it does so under alternative reasoning.").

But even if there were a recording deficiency, plaintiffs did not suffer prejudice as a result. See *Kim*, 493 Mich at 115 (holding that plaintiffs must demonstrate prejudice from plaintiffs' failure to comply with MCL 600.3204(3) to set aside the foreclosure). "To demonstrate such prejudice, [plaintiffs] must show that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute." *Id*. at 115-116.

Plaintiffs claim that their *potential* exposure to "double liability" is the prejudice they suffer. They claim this prejudice may exist because—based on defendants' reply brief below— the holder of the note and the holder of the mortgage appear to be separate entities. See *Talton v BAC Home Loans Servicing, LP*, 839 F Supp 2d 896, 906-907 (ED Mich, 2012) (explaining that where the foreclosing party is not the holder of the note, the debtor-plaintiff may have a genuine claim of potential exposure to double liability), citing *Livonia Prop Holdings, LLC v 12840-12976 Farmington Rd Holdings, LLC*, 399 Fed Appx 97, 102 (CA 6, 2010); see also *Conlin v*

*Mtg Electronic Registration Sys, Inc*, 714 F3d 355, 361-362 (CA 6, 2013) (same).[6]  Several problems plague this argument.

First, plaintiffs' reliance on *Talton* and *Livonia Prop Holdings* is misplaced.  Those cases pertained to whether an obligor may assert a defect in the assignment of the mortgage to avoid exposure for double liability.  See *Talon*, 839 F Supp 2d at 906 (citing *Livonia Prop Holdings*, 399 Fed Appx at 102, in support of the proposition that an obligor "may assert as a defense any matter which renders the assignment absolutely invalid or ineffective, or void" in order to protect the obligor "from having to pay the same debt twice") (internal quotations marks omitted).  Here, plaintiffs do not contest the validity of the underlying assignment or subsequent mergers.  Rather, the issue is *how* PNC Bank obtained its interest, i.e., through a voluntary transaction or by operation law, and whether there was a recording defect.  Those cases are simply inapplicable.

Second, plaintiffs only speculate that they *may* face double liability.  Indeed, they cite no specific demand for, let alone the existence of outstanding debt.  This argument is therefore insufficient on its face to defeat defendants' motion for summary disposition. *Detroit v Gen Motors Corp*, 233 Mich App 132, 139; 592 NW2d 732 (1998) ("[P]arties opposing a motion for summary disposition must present more than conjecture and speculation to meet their burden of providing evidentiary proof establishing a genuine issue of material fact") (citation and quotations marks omitted, brackets in original).

Third, plaintiffs' own complaint acknowledges that Ms. Sinacola received notice of plaintiffs' default from PNC Mortgage and notice of the foreclosure proceedings from PNC Mortgage/PNC Bank.  Yet, aside from seeking a loan modification, plaintiffs still failed to make any mortgage payments after receiving these notices, and took no action until filing this law suit, which was almost one year after learning of the impending foreclosure sale and six weeks before the redemption period expired.  Accordingly, it was not the absence of the foreclosing party's name from the chain of title that could prejudice plaintiffs but rather plaintiffs' own failure to redeem the property even after learning the identity of the foreclosing party.  The recording of PNC Bank's interest simply would not have put plaintiffs in a better position to preserve their interest in light of these facts.  See *Mitan v Fed Home Loan Mtg, Corp*, __ F Supp 2d __, __ (ED Mich, 2013), 2013 WL 5913660 (finding no prejudice where despite the plaintiff's learning of the sheriff's sale two weeks beforehand, the plaintiff "took no action to redeem the property or to challenge the foreclosure until he filed the instant state court action . . . at least six months after learning of the impending foreclosure and just two weeks before the redemption period expired.  Voiding a foreclosure is an equitable remedy and it is unavailable to a party who delays unduly in seeking relief"), citing, among others, *Kim*, 493 Mich at 121 (MARKMAN, J., concurring).

---

[6] Plaintiffs also cite *Residential Funding Co, LLC v Saurman*, 490 Mich 909, 910; 805 NW2d 183 (2011), which distinguishes between a party's interest in indebtedness and a party's interest in a note.  However, as defendants observe, the applicable principle from *Saurman* is that "only the record holder of the mortgage has the power to foreclose . . . ." *Id.* at 910.  As the successor in interest to the mortgagee by merger, PNC Bank was the proper foreclosing party.

Fourth, and most importantly, it is undisputed that PNC Bank acquired the property in a full credit bid. A full credit bid is one that is "equal to the unpaid principal and interest on the mortgage plus the costs of foreclosure . . . ." *New Freedom Mtg Corp v Globe Mtg Corp*, 281 Mich App 63, 68; 761 NW2d 832 (2008). "When property is purchased at a foreclosure sale for an amount equal to the amount due on the mortgage, the debt is satisfied." *Emmons v Lake States Ins Co*, 193 Mich App 460, 463; 484 NW2d 712 (1992) (citation omitted). This means that "the mortgage is extinguished at the time of the foreclosure sale." *Bank of Three Oaks v Lakefront Properties*, 178 Mich App 551, 555; 444 NW2d 217 (1989). In other words, a debt is no longer owed on plaintiffs' mortgage because the mortgage is gone. *Id*. Thus, irrespective of the identity of the note holder, plaintiffs no longer face any exposure on the mortgage.

Finally, we reject plaintiffs' unpreserved argument that the notice of foreclosure was deficient under MCL 600.3212(a) (requiring a notice of foreclosure by advertisement to identify the mortgagor, original mortgagee, and foreclosing assignee, if any). Contrary to plaintiffs' argument, § 3212(a) requires that the relevant notice identify the foreclosing *assignee*, rather than the foreclosing *entity* as plaintiffs incorrectly claim. Here, the notice of foreclosure satisfied this requirement, properly identifying the foreclosing assignee as National City Mortgage Co. Neither the recording nor notice requirements of the foreclosure by advertisement statute were violated in this case.

Affirmed.

Defendants may tax costs, having prevailed in full. MCR 7.219.


/s/ William C. Whitbeck
/s/ E. Thomas Fitzgerald
/s/ Christopher M. Murray