

FILED

Dec 11 2015, 9:13 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEYS FOR APPELLANTS | ATTORNEY FOR APPELLEE |
|---|---|
| Jay P. Kennedy | William G. Lavery |
| Steven E. Runyan | Whisler & Lavery |
| Justin W. Leverton | Elkhart, Indiana |
| Kroger, Gardis & Regas, LLP | |
| Indianapolis, Indiana | |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| R.P. Leasing, LLC, Robert C. Waite, and Ilene A. Waite, | December 11, 2015 |
| *Appellants-Defendants,* | Court of Appeals Case No. 89A01-1412-MF-549 |
| v. | Appeal from the Wayne Circuit Court |
| Chemical Bank, | The Honorable David A. Kolger, Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 89C01-1401-MF-8 |

**Najam, Judge.**

# Statement of the Case

R.P. Leasing, Robert C. Waite, and Ilene A. Waite (collectively "R.P. Leasing") appeal the trial court's grant of summary judgment to Chemical Bank ("the Bank"). R.P. Leasing raises three issues on appeal, which we consolidate and restate as:

1. Whether the trial court erred in granting summary judgment to the Bank because there are genuine issues of material fact.

2. Whether the trial court erred in not awarding attorney's fees to R.P. Leasing.

We affirm in part, reverse in part, and remand for further proceedings.

# Facts and Procedural History

R.P. Leasing purchased the property located at 1865 East M-21, Owosso, Michigan ("the Michigan property") in December 2002 for $674,848. The Michigan property is zoned for commercial use and contains a restaurant building. R.P. Leasing borrowed $700,000 from the Bank to buy the Michigan property, secured by a mortgage on the Michigan property and other property located in Cambridge City, Indiana ("the Indiana property"). The Bank obtained an appraisal of the Michigan property in January 2009, which valued the property at $1,200,000 ("Bollinger Appraisal"). The mortgage contained a power of sale clause that permitted the Bank, upon default by R.P. Leasing, to initiate non-judicial foreclosure-by-advertisement proceedings on the property.

On September 20, 2013, the Bank extended the loan to R.P. Leasing, as evidenced by a renewal Promissory Note ("the Note") executed by R.P. Leasing. The Note contains a provision that it is governed by federal law and Michigan law.

[4] In October 2013, the Bank obtained a second appraisal of the Michigan property ("Paul Appraisal"), which valued the property at $500,000 as of October 7, 2013. After an alleged default on the loan by R.P. Leasing, the Bank posted a Notice of Mortgage Foreclosure Sale on the Michigan property in December 2013. The Notice stated that, as of December 6, 2013, the principal, interest, and late fees owed on the Note totaled $697,439. The county Sheriff sold the Michigan property on January 8, 2014, at which time the Bank bought the property through a "credit bid"[1] for $500,000.

[5] On January 17, 2014, the Bank filed a complaint in the Wayne Circuit Court seeking to collect the balance due on the Note and to foreclose on the Indiana property. The complaint alleged that, as of December 10, 2013, the principal, interest, and late fees due on the Note totaled $716,489.39. The complaint did

---

[1] A "credit bid" refers to a situation in which a judgment creditor (e.g., a bank holding the mortgage) is the purchaser at its own foreclosure sale and bids the judgment instead of cash. *See, e.g.*, *Titan Loan Investment Fund, L.P. v. Marion Hotel Partners, LLC*, 891 N.E.2d 74, 76 (Ind. Ct. App. 2008), *trans. denied*. Such a bid is as effective as payment in actual money would have been, and the amount of the judgment must be reduced by the amount of the credit bid. *Id*. This is true under Michigan law also. *See, e.g.*, *Bank of Three Oaks v. Lakefront Props.*, 444 N.W.2d 217, 218-19 (Mich. Ct. App. 1989).

not mention the sale of the Michigan property, and it did not state that the total due on the Note should be offset by the prior $500,000 Michigan credit bid.

[6] On June 3, 2014, the Bank filed its motion for summary judgment, along with the affidavit of Donald D. Levi, Vice President, Commercial Lending, of Chemical Bank, and its designation of evidence. R.P. Leasing filed its response on August 26, 2014, along with its designation of evidence in opposition to summary judgment. R.P. Leasing's designated evidence included the affidavit of Robert C. Waite, managing member of R.P. Leasing, who stated that the Michigan property was worth in excess of $500,000, and the Bollinger Appraisal which said the Michigan property was worth $1.2 million in January 2009.

[7] On September 16, 2014, the Bank filed its supplemental brief in support of summary judgment and a supplemental affidavit of Levi, both of which stated that the amount due under the Note must be reduced by the $500,000 credit bid the Bank made on the Michigan property. Levi's supplemental affidavit purported to correct the omission of the $500,000 credit bid and to recalculate the amount due on the Note. Levi's calculations attached to his supplemental affidavit as Exhibit H state that the total amount due on the Note as of January 8, 2014, before applying the $500,000 credit, was $790,696.92.

After conducting a hearing, the trial court entered partial summary judgment[2] in favor of the Bank and entered a decree of foreclosure on the Mortgage on the Indiana property. R.P. Leasing filed a motion to correct error in which it argued that the grant of summary judgment was inappropriate, and it alleged for the first time that it should be awarded attorney's fees pursuant to Indiana Code Section 34-52-1-1.[3] The Bank filed its response, and the trial court denied the motion to correct error on December 16, 2014. This appeal ensued.

## Discussion and Decision

### *Standard of Review*

Our standard of review of summary judgment is well-settled:

> We will affirm the trial court's decision only if no genuine issues of material facts exist and the movant is entitled to judgment as a matter of law. *See* Ind. Trial Rule 56(C). If we have any doubts concerning the existence of a genuine issue of material fact, we must resolve those doubts in favor of the nonmoving party and reverse the entry of summary judgment. *Gaboury v. Ireland Rd. Grace Brethren, Inc.*, 446 N.E.2d 1310, 1313 (Ind. 1983). A fact is material for summary judgment purposes if its resolution is decisive of either the action or a relevant secondary issue. *Id.* A factual issue is genuine if those matters properly considered

---

[2] The trial court noted that its judgment on the issues raised by the Bank's summary judgment motion was final and appealable pursuant to Indiana Trial Rule 54(B).

[3] Although R.P. Leasing did not cite Indiana Code Section 34-52-1-1 as support for its claim, it claimed it is entitled to fees for the same reason the mortgagor in *Neu v. Gibson*, 968 N.E.2d 262 (Ind. Ct. App. 2012), was entitled to fees. We held in *Neu* that the mortgagor was entitled to fees pursuant to Indiana Code Section 34-52-1-1(b). *Id.* at 278. That statute provides, in relevant part, that the trial court "may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party: . . . (3) litigated the action in bad faith." Ind. Code § 34-52-1-1(b) (2014).

under Indiana Trial Rule 56 evidence a factual dispute requiring the trier of fact to resolve the opposing parties' different versions. *Id*. Finally, we note that "[s]ummary judgment should not be granted when it is necessary to weigh the evidence." *Bochnowski v. Peoples Fed. Sav. & Loan Ass'n*, 571 N.E.2d 282, 285 (Ind. 1991).

*Reed v. Reid*, 980 N.E.2d 277, 303 (Ind. 2012). Moreover, "[w]here material facts conflict, or undisputed facts lead to conflicting material inferences, summary judgment is inappropriate. This is true even if the court believes the non-moving party will not succeed at trial. Summary judgment should not be used as an abbreviated trial." *Harvest Life Ins. Co. v. Getche*, 701 N.E.2d 871, 874 (Ind. Ct. App. 1998) (citations omitted), *trans. denied*.

### Issue One:  Genuine Issues of Material Fact

R.P. Leasing alleges that the trial court erred in granting summary judgment to the Bank because there is conflicting designated evidence and there are genuine issues of material fact on:  (1) the fair market value of the Michigan property at the time of sale, and (2) the true amount of indebtedness on the Note.

The fair market value of the Michigan property at the time of sale is a material issue in this case because, under Michigan law,[4] it is a defense to a deficiency

---

[4] Michigan law governs the foreclosure proceedings in this case. The Bank is attempting to collect on a debt that arose out of the execution of the Note, which states that, to the extent federal law does not govern, it is governed by Michigan law. *See, e.g.*, *Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1162 (Ind. 2002) ("Indiana choice-of-law provisions generally favor contractual stipulations as to governing law."); *Hoehn v. Hoehn*, 716 N.E.2d 479, 484 (Ind. Ct. App. 1999) ("Parties may generally choose the law that will govern their agreements.") (citations omitted). Federal law does not address foreclosure-by-advertisement proceedings such as these, and so Michigan law applies.

claim (such as the one the Bank brought in the instant case) that the property sold and applied against the Note was sold for less than fair market value. Mich. Comp. Laws § 600.3280 (2014). Thus, if R.P. Leasing could show that the fair market value of the Michigan property was more than the $500,000 credit bid, then, as a matter of Michigan law, the set-off applied to the Note would be the fair market value rather than the lesser amount of $500,000. *Id.*

[12] Both parties designated evidence regarding the fair market value of the Michigan property, and that evidence conflicts. The Bank submitted the Levi Affidavit and the Paul Appraisal to show that the fair market value of the property at the time of sale was $500,000. R.P. Leasing submitted the 2009 Bollinger Appraisal to show the value was possibly as high as $1.2 million and the Waite Affidavit to show that the property's fair market value was more than $500,000 at the time of sale in 2014.

[13] There are three methods or approaches by appraisers to reach the market value of real estate: (1) the current cost of reproducing the property less depreciation; (2) the market data approach, or the value indicated by recent sales of comparable properties in the market, and (3) the income approach, or the value which the property's net earning power will support based on the capitalization of net income. *State Highway Comm'n v. Jones*, 363 N.E.2d 1024, 1024 (Ind. Ct. App. 1977). The three approaches to reaching market value are usually combined and have been judicially approved. *Id.*; *see State v. Bishop*, 800 N.E.2d 918 (Ind. 2003).

[14] The Bollinger Appraisal was five years old. A valid appraisal should be current and, at least, approximate the time of sale. But the Bollinger Appraisal does not indicate the current cost of reproducing the property or include recent sales of comparable properties in the market. And the property was leased to a restaurant when it was appraised in January 2009, but it was vacant when it was sold at the Sheriff's sale in January 2014. Thus, the appraisal does not account for a vacant building with no actual income stream or include the current market rent for a restaurant or other potential use, which would indicate the value based on the capitalization of actual or potential net income. In sum, none of the three approaches to value is current. The data and calculations underlying the 2009 Bollinger Appraisal are stale and have been superseded with the passage of time by more recent information not in the record. *See, e.g.*, *In re Featherworks Corp.*, 25 B.R. 634, 642 (Bankr. E.D.N.Y. 1982) (holding that an appraisal of real property two years old cannot be deemed probative of its present value), *aff'd*, 36 B.R. 460 (E.D.N.Y. 1984). As such, the 2009 Bollinger appraisal does not support a reasonable inference that the fair market value is the same or even approximately the same at the time of sale in 2014. For summary judgment purposes, such an appraisal has no probative value. "In summary judgment proceedings, . . . [t]he probative value of each piece of evidence is . . . to be determined without setting weight or credibility." *Ramon v. Glenroy Const. Co., Inc.*, 609 N.E.2d 1123, 1127 (Ind. Ct. App. 1993) (citing *Burke v. Capello*, 520 N.E.2d 439, 440 (Ind. 1988)), *trans. denied*. Thus, we hold as a matter of law that the five-year-old Bollinger Appraisal did not create a

genuine issue of material fact with respect to the fair market value of the Michigan property at the time of sale.

[15] The Bank also questions the "sufficiency" of the Waite Affidavit as evidence of the fair market value of the Michigan property.[5] Appellee's Br. at 10-12. As the Bank notes, Waite's affidavit merely stated his opinion that "the Michigan real estate fair market value was in excess of $500,000, and that the Michigan real estate did not sell for its fair market value." Appellant's App. at 60. Of course, Indiana Trial Rule 56(E) provides that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Thus, "[t]he assertion of conclusions of law or opinion by one not shown to be qualified to testify to such will not suffice." *Miller v. NBD Bank, N.A.*, 701 N.E.2d 282, 286 (Ind. Ct. App. 1998).

[16] However, it is well settled that "[t]he owner of real estate is assumed to possess sufficient acquaintance with it to estimate the value of the property[,] although his knowledge of the subject matter would not qualify him if he were not the owner." *Jordan v. Talaga*, 532 N.E.2d 1174, 1188 (Ind. Ct. App. 1989) (citation

---

[5] We note that the Bank failed to file any motion to strike or object to the admission of the Waite Affidavit during the summary judgment proceedings, and, thus, waived on appeal any claim that the affidavit is inadmissible. *See, e.g.*, *Paramo v. Edwards*, 563 N.E.2d 595, 600 (Ind. 1990) ("A complaining party has a duty to direct the trial court's attention to a defective affidavit, and failure to raise an objection constitutes waiver.").

omitted), *trans. denied*.  Even a perfunctory and self-serving affidavit is minimally sufficient to raise a factual issue to be resolved at trial and thus defeat summary judgment.  *Hughley v. State*, 15 N.E.3d 1000, 1004 (Ind. 2014).  Waite affirmed that he was an owner of the Michigan property and that, in his opinion, the value of the property at the time of sale was in excess of $500,000.  Under the *Hughley* standard, this is "sufficient, though minimally so, to raise a factual issue to be resolved at trial, and thus to defeat the . . . summary judgment motion."  *Id.*

[17]   The Bank also argues that R.P. Leasing would have had the burden of proof under Michigan law to prove its defense at trial, i.e., that the fair market value of the Michigan property was more than $500,000, and the Bank claims R.P. Leasing failed to meet that burden on summary judgment.  Appellee's Br. at 9-12.  But, in so arguing, the Bank ignores our summary judgment standard of review[6] and, instead, asks us to weigh the evidence.  It is true that R.P. Leasing had the "burden of asserting its affirmative defenses in a summary judgment proceeding."  *Abbott v. Bates*, 670 N.E.2d 916, 920 n.1 (Ind. Ct. App. 1996).  Here, that burden required R.P. Leasing to designate evidence in opposition to the Bank's evidence of the fair market value of the Michigan property.  *Id.*  R.P. Leasing designated such evidence by submitting the Waite Affidavit.  Although

---

[6]  While Michigan law does apply to the substantive aspects of the foreclosure sale in this case, Indiana law governs the procedural aspects, such as the summary judgment standard of review.  *See, e.g.*, *Homer v. Guzulaitis*, 567 N.E.2d 153, 156 (Ind. Ct. App. 1991) ("When the parties to a contract agree on the law which should control the contract, we will give effect to their agreement. At the same time, Indiana procedural law applies.") (citations omitted), *trans. denied*.

the Bank believes that evidence is insufficient, it is not the court's role to weigh the evidence on a motion for summary judgment. Viewing the facts in the light most favorable to R.P. Leasing, as we must, *see, e.g.*, *Jobes v. Tokheim Corp.*, 657 N.E.2d 145, 147 (Ind. Ct. App. 1995), there is conflicting evidence on a material issue of the fair market value of the Michigan property, making summary judgment inappropriate in this case, *see Reed*, 980 N.E.2d at 303.

[18]    R.P. Leasing also correctly points out that there is conflicting designated evidence on the material issue of the true amount of the indebtedness owing on the Note. The Bank's own documents state that the total amount due on the Note is anywhere from $697,439.00 to $790,696.00, all within a period of a little over one month.[7] Such conflicting evidence also precludes summary judgment. *Id.*

[19]    Because there is conflicting designated evidence on the material issues of the fair market value of the Michigan property and the true amount of the

---

[7] The Bank's December 6, 2013, Notice of Mortgage Foreclosure Sale stated that the total amount of principle, interest and late fees due on the Note as of that date was $697,439. The Bank's Complaint and Levi's first Affidavit stated that the total principle, interest and late fees due on the Note as of December 10, 2013, was $716,489.38, an increase of $19,050 in just the four days since the date of the foreclosure notice. The Bank's Loan Transaction History stated that the loan balance due as of December 31, 2013, was $697,439.54, a decrease of approximately $19,050 in the twenty-one days since the date in the Complaint. And Exhibit H of Levi's Supplemental Affidavit dated March 29, 2015, states that the total principle, interest, and late fees due as of January 8, 2015, (and before the $500,000 credit was applied) was $790,696.92. This latter figure is $74,207.54 more than the total amount due as alleged in the Complaint less than thirty days earlier. And it is a $93,257.92 increase of the total amount due as stated in the Notice of Mortgage Foreclosure just a little over thirty days earlier.

indebtedness on the Note, the trial court erred in granting summary judgment to the Bank.

### Issue Two: Attorney's Fees

[20] R.P. Leasing claims that it is entitled to attorney's fees because the Bank's late disclosure of the existence of the credit bid for the Michigan property constitutes litigation in bad faith pursuant to Indiana Code Section 34-52-1-1. R.P. Leasing's claim fails for two reasons. First, R.P. Leasing waived its claim for attorney's fees by failing to raise that issue until its motion to correct error.[8] *Troxel v. Troxel*, 737 N.E.2d 745, 752 (Ind. 2000) ("A party may not raise an issue for the first time in a motion to correct error or on appeal."). Second, even if R.P. Leasing had timely raised the attorney's fee claim, it was not the "prevailing party" on summary judgment, as required by the statute for an award of attorney's fees. Ind. Code § 34-52-1-1(b); *see also French v. State Farm Fire & Cas. Co.*, 950 N.E.2d 303, 315 (Ind. Ct. App. 2011) (holding neither party prevailed when summary judgment was denied and case was remanded for trial), *trans. denied*. The trial court did not err in denying R.P. Leasing's request for attorney's fees.

---

[8] R.P. Leasing did not, as it claims in its reply brief, "litigat[e] this issue [of attorney's fees] during the summary judgment proceedings," Appellant's Reply Br. at 8; rather, the first time it requested fees was in its motion to correct error.

In sum, we affirm the trial court's denial of attorney's fees. However, we reverse the trial court's grant of summary judgment to the Bank, and we remand this cause for proceedings not inconsistent with this opinion.

Affirmed in part, reversed in part, and remanded for further proceedings.

May, J., and Barnes, J., concur.